

FILED
**March 6, 2015**
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-14-00552-CV
4398448
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/6/2015 11:40:04 AM
JEFFREY D. KYLE
CLERK

NO. 03-14-00552-CV

## IN THE THIRD COURT OF APPEALS
## AT AUSTIN, TEXAS

RAGHUNATH DASS, PE
*Appellant*,

v.

TEXAS BOARD OF PROFESSIONAL ENGINEERS
*Appellee.*

Appealed from the 201ST Judicial District Court of Travis County, Texas

## APPELLANT'S BRIEF

JIMMY ALAN HALL
Texas Bar No. 08759800
jahall@fbjah.com

Jimmy Alan Hall, PLLC
4600 Mueller Blvd., Suite 2121
Austin, TX 78723-3372
Tel: (512) 722-3190
Fax: (512) 857-9195

*ATTORNEYS FOR APPELLANT*

## APPELLANT REQUESTS ORAL ARGUMENT

## IDENTITY OF PARTIES AND COUNSEL

NO. 03-14-00552-CV


RAGHUNATH DASS, PE
*Appellant*,


v.


TEXAS BOARD OF PROFESSIONAL ENGINEERS
Appellee.


**PARTIES**                          **COUNSEL**

Raghunath Dass, Ph.D., P.E.          Jimmy Alan Hall
                                     JIMMY ALAN HALL, PLLC
                                     Texas Bar No. 08759800
                                     4600 Mueller Blvd., Suite 2121
                                     Austin, TX 78723-3372
                                     Tel: (512) 722-3190
                                     Fax: (512) 857-9195
                                     jahall@fbjah.com

                                     J. Woodfin Jones
                                     Texas Bar No. 10911700
                                     ALEXANDER DUBOSE JEFFERSON &
                                     TOWNSEND LLP
                                     515 Congress Ave., Suite 2350
                                     Austin, TX 78701-3562
                                     Tel: (512) 482-9300
                                     Fax: (512) 482-9303
                                     wjones@adjtlaw.com

Texas Board of Professional Engineers

Jennifer Lyn Hopgood
ATTORNEY GENERAL'S OFFICE,
ADMINISTRATIVE LAW DIVISION
Texas Bar No. 24073010
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
Tel: (512) 936-1660
Fax: (512) 320-0167
jennifer.hopgood@texasattorneygeneral.gov

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii
TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv
INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi
STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix
REQUEST FOR ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii
ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xiii
STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Issue No. 1: This Court must determine whether the Amended Final Order of the Board is void because the agency was without any authority to modify its August 16, 2012 Final Order while that order was under judicial review.. . . . . . . . . . . . . 7

Issue No. 2: Appellee, the Texas Board of Professional Engineers, did not and does not have subject-matter jurisdiction to regulate construction material testing (CMT), and for this additional reason its November 21, 2013 Amended Final Order is void *ab initio*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Issue No. 3: The Board's Conclusion of Law No. 7 violates the TEPA provision limiting the TBPE's authority to restrict bidding.. . . . . . . . . . . . . . . . . 16

Issue No. 4: The Court should reverse the Board's decision because that decision relied on the 2005/2009 CME Policy Advisory Opinion, which is an invalid and unenforceable standard.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Issue No. 5: Even assuming that the 2005/2009 CME Policy Advisory Opinion was an enforceable "rule," neither the ALJ nor the TBPE had any evidence upon which either could determine whether the acts of Appellant were CME and not CMT, and therefore, the Amended Final Order should be reversed because it is not supported by any substantial evidence in the record.. . . . . . . . . . . . . . . . . . . . . 21

Issue No. 6: Even if the PSPA, or Section 1001.407 of the TEPA, or the CME Advisory Opinion required a conclusion of law that the sampling and testing (CMT) that TSI Labs performed under its contract with the County was actually CME, then

the supervising engineer was the "project engineers" for the County, and not Appellant. Therefore, the agency has taken action not against the engineer who performed the supervisory and acceptance role under the facts, but against Appellant who never served in that role.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# INDEX OF AUTHORITIES

## CASES

*Chocolate Bayou Water Co. & Sand Supply v. Texas Natural Res. Conservation Comm'n*, 124 S.W.3d 844, 853 (Tex. App.—Austin 2003, pet. denied). . . . 9

*City of Celina v. Dynavest Joint Venture*, 253 S.W.3d 399, 403 (Tex. App.—Austin 2008)(no pet.)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n,* 247 S.W.3d 709, 714 (Tex. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Mapco, Inc. v. Carter,* 817 S.W.2d 686, 687 (Tex. 1991). . . . . . . . . . . . . . . . 11, 16

*State Dept. of Public Safety v. Cox,* 279 S.W.2d 661 (Tex. Civ. App.—Dallas 1955)(no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Texas Emp't Comm'n v. Int'l Union of Elec., Radio & Mach. Workers Local* 782, 352 S.W.2d 252, 253 (Tex. 1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

*Texas Highway Comm'n v. Texas Ass'n of Steel Imp., Inc.,* 372 S.W.2d 525, 530 (Tex. 1963).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Texas State Bd. of Pharmacy v. Witcher,* 447 S.W.3d 520, 527 (Tex. App.—Austin 2014, pet. filed). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## STATUTES

Act of May 15, 1997, 75th Leg., R.S., 1997 Tex. Gen. Laws 344. (Now codified at Tex. Occ. Code § 1001.003(c), following a recodification without substantive alteration. Acts of May 24, 2001, 2001, 77th Leg., ch. 1421, § 1, eff. June 1, 2003.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Act of May 15, 1997, Introduced Version, Tex. S.B. 623, Sec. 4 (§2(4)),¶¶ 4-27–5-1, 75th Leg., R.S., (1997), *available at* http://www.legis.state.tx.us/tlodocs/75R/ billtext/html/SB00623I.htm). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Act of May 15, 1997, (Enrolled Version, Tex. S.B. 623, Sec. 4 (§2(4)),¶¶ 5-8–5-9, 75th Leg., R.S., (1997), (emphasis added), *available at* http://www.legis.state.tx.us/tlodocs/75R/billtext/html/SB00623F.htm).. . . 13

Act of May 29, 2005, 79th Leg., R.S., ch. 1145, § 5, sec. 13.2451 (b), 2005 Tex. Gen. Laws 3771, 3773 ("2005 version") (amended 2007, 2011, 2013) (current version at Tex. Water Code Ann. § 13.2451 (b).. . . . . . . . . . . . . . . . . . . . 10

Acts of May 24, 2001, 77th Leg., ch. 1421, § 1, eff. June 1, 2003.. . . . . . . . . 12, 13

Texas Gov't Code § 2001.003(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Tex. Gov't Code § 2001.174(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Tex. Gov't Code § 2001.174(2)(B).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

Tex. Gov't Code § 2001.1775.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 10

Tex. Gov't Code, § 2254.002(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tex. Gov't Code § 2254.002(2)(A)(vii) and (B)(vii). . . . . . . . . . . . . . . . . . . . . . 17

Tex. Gov't Code, § 2254.003(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

Tex. Occ. Code § 1001.003(b); Enrolled Version, at Sec. 4 (§2(4)).. . . . . . . . . . 13

Tex. Occ. Code § 1001.003(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tex. Occ. Code §§ 1001.202, .003(b), .003(c)(1), .301(a).. . . . . . . . . . . . . . . . . 11

Tex. Occ. Code § 1001.203(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tex. Occ. Code, § 1001.407. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 23

OTHER

Recording 751133a (Tape 1 of 3, Side 1), Public Hearing on Tex. S.B. 623 Before the S. Comm. on State Affairs, 75th Leg., R.S., 0:609-0:619 (Mar. 20, 1997), *available at* https://www.tsl.texas.gov/ref/senaterecordings/ 75th-R.S./751133a/index.html .................................. 13

Texas Board of Professional Engineer Policy Advisory Opinion Regarding Construction Materials Engineering (August 20, 2009).
.................................. 3, 18, , 19, 21, 22, and throughout

## STATEMENT OF THE CASE

*Nature of the case.* Appellee, the Texas Board of Professional Engineers ("the Board" or "the TBPE"), sanctioned appellant for alleged violations of the Texas Engineering Practices Act. Appellant Mr. Dass denies that he committed any violation and asserts that the TBPE does not have jurisdiction over the facts of this case and did not have the authority to amend its final order because the case was under judicial review when the Board did so.

*Course of proceedings.* On April 18, 2012, the State Office of Administrative Hearings (SOAH) held a contested-case hearing. C.R. at 343. On June 13, 2012, the Administrative Law Judge (ALJ) issued a Proposal for Decision (PFD) that proposed that the Board adopt three conclusions of law that Appellant violated the rules of the TBPE. C.R. at 359. On August 16, 2012, the Board adopted these three conclusions of law in its Final Order. C.R. at 363-64. Subsequently, Appellant filed a motion for rehearing of the Board's decision, which was overruled by operation of law. Appellant then, October 30, 2012, filed suit for judicial review of the Board's August 16, 2012 final order. On September 27, 2013, Judge Gisela Triana, sitting as the 419th District Court of Travis County, in Cause No. D-1-GN-12-003397, issued a Final Judgment, which struck Findings of Fact Nos. 16 and 17 and Conclusion of No. Law

8 because they were not supported by substantial evidence, and upheld the remainder of the Board's August 16, 2012 final order. However, "[in] light of the Court's decision to strike limited portions of the Final Order, the Court *remands this matter* to the Board *for any further action* it deems appropriate given the ruling." C.R. at 365-66. On October 24, 2013, Appellant filed an appeal of the District Court's September 27, 2013 final judgment. C.R. 379. Subsequently, on November 21, 2013, the Board adopted an Amended Final Order under the same case number as the August 16, 2012 Final Order, conforming it to the District Court's judgment by striking previously numbered Findings of Fact Nos. 16 and 17 and Conclusion of No. Law 8. C.R. at 62-66, 367-69. Then on December 3, 2013, Appellant moved to withdraw the first appeal that he previously filed with the Third Court of Appeals. C.R. at 370-72. The Third Court of Appeals dismissed this appeal on December 18, 2013. C.R. at 379.

On December 10, 2013, Appellant filed a motion for rehearing on the November 21, 2013 Amended Final Order. C.R. at 380. That motion for rehearing was overruled by operation of law. C.R. at 10. On February 24, 2014, Appellant then filed suit for judicial review of the November 21, 2013 Amended Final Order. C.R. at 4.

*District court disposition.* The 201st District Court granted defendant's/the TBPE's

motion summary judgment, upholding the Board's Amended Final Order. C.R. at 465.

Appellant timely moved for a new trial. C.R. at 466. Judge Yelenosky denied that

motion for new trial. C.R. at 471.

## REQUEST FOR ORAL ARGUMENT

This Court should grant oral argument because it would allow the Court to better analyze the complicated legal issues of first impression presented in this appeal. *See* Tex. R. App. P. 39.1(b)–(c).

No appellate court has yet determined whether construction materials testing (CMT) is within the jurisdiction of the Texas Board of Professional Engineers. Because the scope of the TBPE's jurisdiction depends on technical distinctions within the industry that were incorporated by reference into the Texas Engineering Practice Act, oral argument would help clarify the Legislature's intent.

In addition, no appellate court has yet ruled on the validity of the Board's 2005/2009 CME Policy Advisory Opinion that is a component of the appeal. The validity of a standard adopted by a state agency is a specific inquiry into the standard's application and the procedures of its adoption, which oral argument could explain more thoroughly.

# ISSUES PRESENTED

Issue No. 1: This Court must determine whether the Amended Final Order of the Board is void because the agency was without any authority to modify its August 16, 2012 Final Order while that order was under judicial review.

*Issue 2.* This Court must determine whether the Board has the authority to regulate Construction Materials Testing (CMT) under the Texas Engineering Practices Act. This determination hinges on the language defining the "practice of engineering" in the Texas Occupation Code, and the legislative history behind that definition.

*Issue 3.* This Court must also determine whether the Board has the authority to restrict a testing firm from submitting a competitive bid for CMT for a public works project when no registered professional engineer from that firm was employed in connection with the services provided.

*Issue No. 4.* This Court must determine whether the TBPE's CME Policy Advisory Opinion constitutes an invalid standard because it was not promulgated in accordance with the mandatory procedures prescribed under the Administrative Procedure Act.

*Issue No. 5.* Even assuming that the CME Policy Advisory Opinion were an enforceable "rule," this Court must determine whether the record contains any substantial evidence supporting a conclusion that Appellant practiced professional engineering in this case.

*Issue No. 6.* Even assuming that the PSPA, or Section 1001.407 of the TEPA, or the CME Advisory Opinion required a conclusion that the sampling and testing in this case was actually CME, then this Court must determine who the "supervising engineer" was for the Project.

## STATEMENT OF FACTS

1. Appellant, Raghunath Dass, Ph.D., P.E. is a professional engineer, holding Texas License Number 90119. C.R. at 62, (FoF No. 1).

2. At all relevant times, Appellant was employed by Trinity Soil Investigation Laboratories, Inc., (TSI Labs), TBPE Firm License No. 9236. C.R. at 62, (FoF No. 1).

3. In February 2009, San Patricio County (the County) solicited competitive bids for a Horse Barn Project at the County fairgrounds in Sinton, Texas. A.R.[1] at 263. In response to the advertisements, TSI Labs submitted a proposal to perform CMT for the County on February 18, 2009. C.R. at 392-94, 418. Because the advertisement for bids and TSI Labs' proposal did not have any engineering

---

[1] Please note, pursuant to Texas Rule of Appellate Procedure 34.5 (a), Appellant requested in his September 15, 2014 letter to the Travis County District Clerk that the Administrative Record (SOAH Transcript and Exhibits) filed in Cause No. D-1-GN-12-003397 be included in the Clerk's Record for this appeal. Additionally, Appellant obtained a formal bill of exception in which the Administrative Record in Cause No. D-1-GN-12-003397 would be part of the Clerk's Record for Cause No. D-1-GN-14-000568 filed in this appeal. February 9, 2015 S.C.R. at 12-13. However, the District Clerk did not include the Administrative Record with her original Clerk's Record of October 30, 2014 nor with her Supplemental Clerk's Record of February 9, 2015. Upon discovering that the compact disc/DVD with the Administrative Record was not included with the February 9, 2015 Supplemental Clerk's Record, Appellant contacted the Travis County District Clerk's Office, informed that office of the omission, and requested that the Administrative Record be sent to this Court. The District Clerk's Office replied that the compact disc/DVD would be pulled from storage and sent to the Clerk of this Court as soon as possible. Therefore, the page references to "A.R." in this brief are to the page numbers of the SOAH Reporter's transcript.

functions, TSI Labs did not make Appellant aware of this TSI Labs testing proposal at that time. C.R. at 64, (FoF No. 10).

4.   Naismith Engineering, Inc. was the engineering firm of record for the Project. C.R. at 344. The County assigned all engineering functions to Naismith Engineering. A.R. at 34, *ll*.17-23.  The County subcontracted TSI Labs only to do sampling and testing. A.R. at 34, *ll*.23-25.

5.  On March 11, 2009, Rock Engineering and Testing Laboratory, Inc. (RETL or "Rock Engineering and Testing") also submitted a proposal to the County, to perform construction materials engineering (CME) ***and*** CMT for the Project. C.R. at 399-406.

6. From March 17 through April 7, 2009, TSI Labs submitted 16 CMT reports to Naismith Engineering, the supervising and acceptance engineers for the Project. C.R. at 38 (FoF No. 7), 344, 419-24.

7. Lewis Shrier, P.E., a Senior Structural Engineer and Project Manager at Naismith Engineering, served as "project engineer" for the Project. A.R. at 48, *l*.21 to 49, *l*. 3.  Receiving and accepting the CMT reports was Mr. Shrier's responsibility. A.R. at 49, *ll*.4-8.  Mr. Shrier understood that Naismith Engineering was responsible for all engineering functions. A.R. at 48, *l*.21-25, at 49, *ll*. 1-3.   Mr. Shrier acknowledged that  TSI Labs was only subcontracted to do sampling and testing.

A.R. at 49, *ll* .9-12. Mr. Shrier's review of the CMT Reports allowed him to conclude that TSI Labs was doing their job appropriately. A.R. at 67, *ll*. 1-2.

8. Appellant first became aware of the Project on April 17, 2009, when Mr. Shrier emailed him the TBPE's 2005 CME Policy Advisory Opinion. C.R. at 38 (FoF No. 10); C.R. at 64 (FoF No. 10); A.R. at 256.

9. To address Mr. Shrier's concerns, Appellant performed a discretionary quality review of the test data in the TSI Labs CMT reports, and signed and sealed copies of the reports on April 20, 2009 to indicate that Appellant's quality review revealed that the equipment had been calibrated properly, the calculations were correct, that the technicians were qualified, that TSI Labs had used the correct programs and forms, and that TSI Labs had selected the applicable ASTM test methods. A.R. at 113, *l*.22 to 114, *l*.1; at 118, *ll*.9-11.

10. Upon learning that TSI Labs had been hired for the Project instead of RETL, Mark Rock, P.E. (License No. 71395), the owner of RETL, searched the TBPE's database on licensed engineers to determine what engineers were in the employ of TSI Labs and filed TBPE Complaint No. D-31480 on April 22, 2009. C.R. at 397, ¶¶C-E.

11. Mr. Shrier remained in contact with Mark Rock and Curtis Rock, and son of Mark Rock and employee of RETL, during the selection process, and encouraged

3

RETL to submit a proposal to the County. A.R. at 301. During the selection process, when the County asked Shrier to evaluate TSI Labs's proposal, Mr. Shrier volunteered that he strongly preferred RETL to TSI Labs. A.R. at 307. After TSI Labs had been selected, Mr. Shrier later encouraged the County to fire TSI Labs and hire RETL instead. A.R. at 307, 313. Mr. Shrier was the first person who Mark Rock contacted about his intent to file a complaint against TSI Labs. A.R. at 308.

12. Mr. Shrier became concerned about the lack of an engineer's supervision after Mark Rock sent him the TBPE's 2005 CME Advisory Opinion. C.R. at 349. Thereafter, Mr. Shrier contacted the TBPE to determine his obligations as project engineer. C.R. at 349. The TBPE staff advised Mr. Shrier that the Project required supervision by an engineer, which he could do if he had sufficient geotechnical experience. C.R. at 349. Mr. Shrier felt he lacked sufficient experience, and at this point contacted TSI Labs to inquire about an engineer's supervision. C.R. at 349.

13. Due to the concerns that Mr. Rock and Mr. Shrier raised, the County discontinued its contract with TSI Labs and hired RETL in April 2009 to perform the same testing. C.R. at 344.

## SUMMARY OF THE ARGUMENT

The TBPE took action against Appellant affecting his professional engineer's license. However, when the TBPE did so, it did not have the authority to do so and thereby issued a void order. The Administrative Procedure Act prohibits any agency from modifying a decisions that it has made in a contested case during the judicial review of that case. Tex. Gov't Code, § 2001.1775. Thus, the Board's action on November 21, 2013 in Appellant's contested case was void because that case was then under judicial review. Furthermore, a collateral attack on an agency order may be maintained successfully if the order is void.

An additional reason that the Board's November 21, 2013 was void *ab initio* is because the TBPE did not have subject-matter jurisdiction to regulate construction material testing (CMT) within the definition of "professional engineering."

The TBPE also exceeded its authority when it found that Appellant violated an TBPE rule by applying a requirement from the Professional Services Procurement Act (PSPA) to CMT, which is not professional engineering, and thus is outside of the requirements of the PSPA.

The TBPE also applied an invalid and unenforceable legal standard in judging Appellant and his actions, which application prejudiced Appellant's substantial rights requiring the reversal of the subject order. The TBPE applied its advisory opinions

5

regarding construction material engineering that it had not and has not adopted as a valid rule under the Administrative Procedure Act.

Even assuming that the subject advisory opinion was an enforceable "rule," the record is devoid of any evidence applying the standards in that advisory opinion to determine whether the actions by Appellant's employer were simply CMT or were CME to support any findings and conclusions that Appellant committed any violations of the TBPE's rules.

Finally, even if the CMT in this case were CME, the "supervising engineer" under that logic was not Appellant, but Naismith Engineering, the actual supervising engineer for the Project.

## ARGUMENT AND AUTHORITIES

## I.

**Issue No. 1: The Amended Final Order of the Texas Board of Professional Engineers is void because the agency was without any authority to modify its August 16, 2012 Final Order while that order was under judicial review.**

*Summary of Argument*

Because the Administrative Procedure Act deprives the TBPE of the authority to modify its decisions in a contested case while that contested case is under judicial review, the Board's action on November 21, 2013 in Appellant's contested case was void because that contested case was under judicial review on that date and until, at least, December 18, 2013.

*Argument*

Section 2001.1775 of the Texas Government Code states:

> Except as provided by Section 2001.175(c), ***an agency may <u>not</u> modify its findings or decision in a contested case after proceedings for judicial review of the case have been instituted*** under Section 2001.176 ***and during the time that the case is under judicial review.***

(Emphasis added).

As noted in the Course of Proceedings under the Statement of the Case above, on October 30, 2012, Appellant initiated proceedings for judicial review of the TBPE's contested case against him by filing suit in district court, and then continued

7

those proceedings by filing an appeal of the district court's September 27, 2013 final judgment with this Court of Appeals. However, while that contested case was continuing under judicial review, on November 21, 2013, the Board reconvened and adopted an Amended Final Order under the same case number as the August 16, 2012 final order. C.R. at 12-16. Then on December 3, 2013, Appellant moved to withdraw the first appeal that he previously filed with the Third Court of Appeals. C.R. at 370. The Third Court of Appeals dismissed this appeal on December 18, 2013. C.R. at 379.

The Board did not have any authority to take its November 21, 2013 action when it amended its August 16, 2012 Final Order because that Final Order was still under judicial review at that time. Therefore, the Amended Final Order is void. By this issue, Appellant is not asserting that the Board's amended order is voidable, but rather that it is wholly and completely void.

Any action of an agency is void and cannot be validated by waiver, consent, or any other doctrine. This Court has consistently confirmed this basic principal of jurisprudence.

Applying this same principal that any agency action that is beyond the scope of that agency's authority is void, the Texas Supreme Court held that a Texas Highway Commission "Minute Order is void because it is contrary to the competitive

8

bidding statute, there can be no basis for saying that the disputed order was authorized by law. It was wholly nugatory . . . ." *Texas Highway Comm'n v. Texas Ass'n of Steel Imp., Inc.,* 372 S.W.2d 525, 530 (Tex. 1963). *See also State Dept. of Public Safety v. Cox,* 279 S.W.2d 661 (Tex. Civ. App.—Dallas 1955)(no writ)(The Dallas Court of Civil Appeals stated "As already pointed out, a conformity to statutory requirements is essential to the exercise of jurisdiction by that agency," when holding that the alleged administrative suspension of a drivers license was void because the agency's actions did not comply with but fell outside of the scope of and restrictions in the legislation delegating the administrative authority to the agency).

This Court has also held that a collateral attack on an agency order may be maintained successfully if the order is void. *Chocolate Bayou Water Co. & Sand Supply v. Texas Natural Res. Conservation Comm'n*, 124 S.W.3d 844, 853 (Tex. App.—Austin 2003, pet. denied). An agency order is void in the requisite sense if "the order shows on its face that the agency exceeded its authority." *Id.* This Court restated this principal in holding that the trial court did have the authority under the declaratory judgment act to determine whether an order of the Texas Commission on Environmental Quality ("the TCEQ") to amend the City of Celina's certificate of convenience and necessity was void because the order violated a restrictive provision in the Texas Water Code, rather than only in a direct appeal of the agency order. *City*

*of Celina v. Dynavest Joint Venture*, 253 S.W.3d 399, 403 (Tex. App.—Austin 2008)(no pet.). Section 13.2451(b) of the Texas Water Code, as it then existed, restricted the TCEQ's authority to extend a municipality's certificate beyond its extraterritorial jurisdiction. Act of May 29, 2005, 79th Leg., R.S., ch. 1145, § 5, sec. 13.2451 (b), 2005 Tex. Gen. Laws 3771, 3773 ("2005 version") (amended 2007, 2011, 2013) (current version at Tex. Water Code Ann. § 13.2451 (b).

In this case, the Board did not have any authority to act upon, including amending, its August 16, 2013 order while that order was still under judicial because of the proscription in the Texas Government Code. Tex. Gov't Code, § 2001.1775.

Because the Board's Amended Final Order of November 21, 2013 is void for the reason asserted above in this Issue No. 1, this Court need not reach the remaining issues raised in this Appellant's Brief. In an abundance of caution, however, Appellant submits the following additional issues.

## II.

**Issue No. 2: Appellee, the Texas Board of Professional Engineers, did not and does not have subject-matter jurisdiction to regulate construction material testing (CMT), and for this additional reason its November 21, 2013 Amended Final Order is void *ab initio*.**

*Summary of Argument*

The Court should declare that the Board's Amended Final Order is void because that order exceeds the Board's jurisdiction to regulate the practice of engineering. *Texas Emp't Comm'n v. Int'l Union of Elec., Radio & Mach. Workers Local* 782, 352 S.W.2d 252, 253 (Tex. 1961); *Mapco, Inc. v. Carter,* 817 S.W.2d 686, 687 (Tex. 1991)(Lack of jurisdiction is considered a fundamental error, and thus is subject to review even if raised for the first time on appeal.). The Administrative Procedure Act (APA) requires reversal of an agency decision made in excess of the agency's statutory authority. Tex. Gov't Code § 2001.174(2)(B). The Legislature authorized the Texas Board of Professional Engineers under the Texas Engineering Practice Act (TEPA) only to "regulate the practice of engineering." Tex. Occ. Code §§ 1001.202, .003(b), .003(c)(1), .301(a).

*Argument*

The Board's Amended Final Order is dependent on and limited to the Board's belief that the Board has the authority to regulate CMT for a public works project. A.R. p. 26, *ll*. 10-18. The Amended Final Order is limited to three alleged violations by Appellant stated in three conclusions of law, all of which are limited to CMT. (Conclusion of Law Nos. 5, 6, and 7) These three conclusions of law hinge upon findings of fact, all of which are limited to CMT within a public works project.

11

(Findings of Fact Nos. 6 - 9, 11-17). The three "violations" are that Appellant: (1) "*failed to supervise* the performance of the *CMT testing*," (2) "*allowed TSI [Labs] to release CMT reports* without having signed, dated, and sealed the CMT reports," and (3) "*failed* to exercise reasonable care and diligence *to prevent TSI [Labs] from submitting a competitive bid for [CMT* that became CME because it was for a public works project] in violation of the [Professional Services Procurement Act] PSPA."

However, the "practice of engineering," as defined by the TEPA, does not include CMT. The Legislature clarified that CME does not include CMT when it last modified the definition of the "practice of engineering," in 1997, by adding an illustrative list of services included under the general definition. Tex. S.B. 623, 75th Leg., R.S., 1997 Tex. Gen. Laws 344. This list previously appeared at Tex. Rev. Civ. Stat. art. 3271a Sec.2 (4), and now appears at Tex. Occ. Code § 1001.003(c), following a recodification without substantive alteration. Acts 2001, 77th Leg., ch. 1421, § 1, eff. June 1, 2003.) The Introduced Version of S.B. 623 included "testing or evaluating materials for construction" in this list. (Introduced Version, Tex. S.B. 623, Sec. 4 (§2(4)), ¶¶ 4-27–5-1, 75th Leg., R.S., (1997), *available at* http://www.legis.state.tx.us/tlodocs/75R/billtext/html/SB00623I.htm) However, the Senate Committee inserted the words "engineering for" before this phrase, so the enrolled and enacted versions read "*engineering for* testing or evaluating materials

12

for construction. Enrolled Version, Tex. S.B. 623, Sec. 4 (§2(4)), ¶¶ 5-8–5-9, 75th Leg., R.S., (1997), (emphasis added), *available at* http://www.legis.state.tx.us/tlodocs/ 75R/billtext/html/SB00623F.htm.

The Committee also added language emphasizing that coverage under the list was limited "[t]o the extent the following services . . . meeting [the general] definition." *Id.* at Sec. 4 (§2(4)), ¶¶ 5-4–5-5. Although this emphatic language does not appear in the current definition at Tex. Occ. Code § 1001.003(c), no substantive change was intended by the recodification that omitted this language. Act of May 24, 2001, 77th Leg., ch. 1421, § 1, eff. June 1, 2003. Thus, the general principle that the illustrative list is limited by the general definition remains in effect. The general definition states that the practice of engineering "requires engineering education, training, and experience." Tex. Occ. Code § 1001.003(b); Enrolled Version, Tex. S.B. 623 at Sec. 4 (§2(4)). At the public hearing on S.B. 623, Senator Ratliff explained that this alteration "addresses some concerns that have been raised by the architectural community, surveyors, and some contractors." Recording 751133a (Tape 1 of 3, Side 1), Public Hearing on Tex. S.B. 623 Before the S. Comm. on State Affairs, 75th Leg., R.S., 0:609-0:619 (Mar. 20, 1997), *available at* https://www.tsl.texas.gov/ref/senaterecordings/ 75th-R.S./751133a/index.html.

If the Legislature had intended to include pure CMT, which does not require engineering education, training, and experience, among the practices that the TBPE was authorized to regulate, it would *not* have added the phrase "engineering for" as a qualifier. The Legislature's addition of this qualifier indicates that it intended for the TBPE's jurisdiction to be limited to CME, and not to include CMT. This specific application conforms to the general definition of the "practice of engineering," because CME requires engineering education, training, and experience, but CMT does not.

Moreover, neither the TEPA nor the PSPA requires CMT to be treated as CME for a public works project, and thus extend the TBPE's jurisdiction to CMT performed specifically for a public works project. All that Section 1001.407 of the TEPA requires is that if the State or a political subdivision of the State constructs "a public work involving engineering," then that agency must have an engineer prepare "the *engineering plans, specifications, and estimates*" and must have an engineer directly supervise the performance of "the *engineering construction.*" Tex. Occ. Code, § 1001.407 (Emphasis added). That provision does not even address CMT, much less require CMT to be performed under the supervision of an engineer.

The PSPA requires only that governmental entities select providers of certain "professional services" or award contracts for those services "on the basis of

14

demonstrated competence and qualifications" and "for a fair and reasonable price." Tex. Gov't Code, §2254.003(a). However, none of those "professional services" in the PSPA include CMT. Tex. Gov't Code, §2254.002(2).

Because TSI Labs submitted a proposal to perform CMT only[2] and performed CMT only,[3] the CMT that TSI Labs did for the County for the Project is not subject to the PSPA and is outside the scope of the TBPE's jurisdiction. Therefore, the TBPE cannot penalize Appellant for TSI Labs' actions or Appellant's actions related to the Project, and the Board's Amended Final Order is void *ab initio* and should be reversed.

Because the Board's Amended Final Order is November 21, 2013 is void for the reason asserted above in this Issue No. 2, this Court need not reach the remaining issues raised in this Appellant's Brief. In an abundance of caution, however, Appellant submits the following additional issues.

---

[2] This fact is undisputed. Am. Final Order, Finding of Fact No. 5. C.R. 14.

[3] This fact is undisputed. Am. Final Order, Finding of Fact No. 7. C.R. 14.

15

## III.

**Issue No. 3: The Board's Conclusion of Law No. 7 violates the TEPA provision limiting the TBPE's authority to restrict bidding.**

*Summary of Argument*

The Board's amended order should be reversed because Conclusion of Law No. 7 exceeds the Board's jurisdiction over competitive bidding.[4] Conclusion of Law No. 7 of the Amended Final Order claims, "Respondent violated 22 TAC § 137.63(b)(2) when he failed to exercise reasonable care and diligence to prevent TSI from submitting a competitive bid for professional engineering services in violation of the PSPA." C.R. at 65. The APA requires reversal of an agency decision made in excess of the agency's statutory authority. Tex. Gov't Code § 2001.174(2)(B).

*Argument*

The Board's power to restrict competitive bidding under the TEPA is narrowly limited for the purposes of ensuring compliance with the Professional Services Procurement Act (PSPA) and prohibiting false, misleading, or deceptive practices. Tex. Occ. Code §1001.203(a). The Board based its finding of a violation by Appellant on the PSPA alone. Tex. Gov't Code §2254.003(a).

---

[4] Lack of jurisdiction is considered a fundamental error, and thus is subject to review even if raised for the first time on appeal. *Texas Emp't Comm'n v. Int'l Union of Elec., Radio & Mach. Workers Local* 782, 352 S.W.2d 252, 253 (Tex. 1961); *Mapco, Inc. v. Carter,* 817 S.W.2d 686, 687 (Tex. 1991).

The PSPA prohibits a government entity from selecting a provider of professional services on the basis of competitive bidding. Tex. Gov't Code § 2254.003(a). "Professional services" that are relevant with respect to the TEPA are either "professional engineering services" as defined by Texas law, or services provided in connection with the employment of a registered professional engineer. Tex. Gov't Code § 2254.002(2)(A)(vii) and (B)(vii).

The CMT that TSI Labs performed for the County was not a "professional service" as defined by the PSPA, because CMT does not meet Texas law's definition of "professional engineering service."[5] In addition, the County did not employ Appellant as a professional engineer to perform any engineering, including CME, in connection with the County's acceptance of the TSI Labs proposal under the County's own bid advertisement terms. Rather, the County employed a testing firm for CMT for which Appellant worked.[6] Thus, the TBPE exceeded the limits of its authority when it found that TSI Labs' proposal and the County's acceptance of that proposal constituted a violation of the PSPA, because: (1) the CMT services that TSI Labs performed for the Project were not "professional engineering services," (2) the

_____

[5] *See supra* Part II.

[6] The undisputed fact is that Appellant did not have any knowledge of the Project until **after** TSI Labs had already completed the CMT on the Project. Am. Final Order, Finding of Fact No. 10, C.R. 14.

17

scope of the work for which the County contract with TSI Labs was sampling and testing only and not any professional engineering services or any work that would require a registered professional engineer, and (3) Appellant never provided any engineering services to the County under the subject contract, for he was unaware of the existence of that contract until the actual supervising engineers on the Project contacted Appellant. Therefore, the Amended Final Order should be reversed.

**IV.**

**Issue No. 4: The Court should reverse the Board's decision because that decision relied on the 2005/2009 CME Policy Advisory Opinion, which is an invalid and unenforceable standard.**

*Summary of Argument*

The Court should reverse the Board's Amended Final Order because the Board applied an invalid legal standard in judging Appellant and his actions. An agency decision based on an invalid standard that prejudices the appellant's substantial rights must be reversed. *Texas State Bd. of Pharmacy v. Witcher,* 447 S.W.3d 520, 527 (Tex. App.—Austin 2014, pet. filed); Tex. Gov't Code §2001.174(2). The suspension of a professional license "undeniably affect[s]" the license holder's substantial rights. *Id.*

*Argument*

The 2005/2009 CME Policy Advisory Opinion ("CME Advisory Opinion" of "Advisory Opinion") is an invalid or unenforceable standard.[7] If a standard that an state agency is attempting to enforce against a regulated person meets the Texas Government Code's definition of a "rule," and that agency did not promulgate that standard as a "rule" in accordance with the mandatory procedures established by the Administrative Procedure Act (APA), then that standard is invalid and unenforceable. *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n,* 247 S.W.3d 709, 714 (Tex. 2008).

The CME Advisory Opinion that the TBPE used as its standard to determine what is CME and what is CMT meets the APA's definition of a "rule." The APA defines a "rule" as follows:

> (A) means a state agency statement of general applicability that:
>     i. implements, interprets, or prescribes law or policy; or
>     ii. describes the procedure or practice requirements of a state agency;
> (B) includes the amendment or repeal of a prior rule; and
> (C) does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

Texas Gov't Code § 2001.003(6).

---

[7] This error was first raised by Dass. Pl. Mot. For Reh'g, ¶1, C.R. 382. The grounds were identified with greater specificity later. Pl. Mot. For New Trial, ¶16, C.R. 468.

The CME Advisory Opinion is the TBPE's statement of general applicability regarding CME and CMT that it used as the standard in its enforcement action against Appellant.[8]

The TBPE never adopted this Advisory Opinion as a rule under the APA. Therefore, it is unenforceable against Appellant.

Underscoring the policy behind the APA rule-making requirement is that the record in this matter is replete with the confusion that this Advisory Opinion creates and continues to create. The ALJ summarized part of the testimony of Mr. Lewis Shrier, Senior Structural Engineer and Project Manager for Naismith Engineering for the Project, as "after reading the CME Advisory Opinion several times, he still had some questions." C.R. 349; A.R. 52, *ll*. 1-4. David Wendel testified that the County did not understand that the material testing services would fall under the PSPA. C.R. 350. Most telling is Finding of Fact No. 17 in the Amended Board Order because it admits to this confusion and lack of enforceability by stating "Staff failed to prove a common understanding and interpretations among professional engineers concerning the requirements relating to materials testing in conformance with the Professional Services Procurement Act (PSPA)." C.R. 38.

---

[8]      C.R. 38, 347-48, 354-56.

Underscoring the arbitrariness and capriciousness of the TBPE's application of a confusing non-rule to the regulated community and to Appellant are the decisions of the TBPE and the ALJ to punish Appellant while admitting to the confusion of the non-rule advisory opinion and the ALJ's belittling Appellant for simply disagreeing with the TBPE's asserting that it has authority beyond the scope of its enabling legislation. The ALJ went so far as to say "The ALJ specially notes for the Board's consideration that at times Mr. Dass appeared to persist with the argument that material testing, even for a public works project, is not engineering. This appeared to be so even after the PSPA and the CME Advisory Opinion were clearly brought to his attention in this proceeding. For this reason, the Board may want to consider requiring Mr. Dass to attend an appropriate continuing education course." C.R. 356, fn. 37.

## V.

**Issue No. 5: Even assuming that the 2005/2009 CME Policy Advisory Opinion was an enforceable "rule," neither the ALJ nor the TBPE had any evidence upon which either could determine whether the acts of Appellant were CME and not CMT, and therefore, the Amended Final Order should be reversed because it is not supported by any substantial evidence in the record.**

21

## Summary of Argument

The record does not have any evidence applying the standards set in the 2005/2009 CME Policy Advisory Opinion to determine whether the actions by Appellant's employer, TSI Labs, were simply CMT or were CME, thus depriving the record of any evidence to support the application of this non-rule advisory opinion to Appellant or his employer.

## Argument

The CME Advisory Opinion states, in part:

> The CMT, within the context of CME includes collecting samples, performing well-defined test procedures, and reporting data. ***In certain situations, performing tests and sampling by using well-defined engineering specifications may <u>not</u> be considered engineering activities.***

The ALJ did not propose, and the TBPE did not adopt any findings of fact or conclusions of law regrading whether the services that TSI Labs provided under its proposal that the County accepted were the practice of professional engineering or any type of engineering practices, *i.e.,* what type of tests, what type of samples, etc.

Even applying this non-rule advisory opinion to Appellant through the work he did not perform (but that his employer performed for the County), would require the TBPE to make findings and conclusions based on the non-rule advisory opinion. However, the TBPE never did so. Therefore, the Amended Board Order is facially and factually unsupported by any evidence, even when ignoring the TBPE's lack of

22

jurisdiction and use of an invalid rule, for it does not contain findings of fact and conclusions of law that establish that the TBPE has jurisdiction over the CMT under the facts of this case, and therefore, should be reversed.

**VI.**

**Issue No. 6: Even if the PSPA, or Section 1001.407 of the TEPA, or the CME Advisory Opinion required a conclusion of law that the sampling and testing (CMT) that TSI Labs performed under its contract with the County was actually CME, then the supervising engineer was the "project engineers" for the County, and not Appellant. Therefore, the agency has taken action not against the engineer who performed the supervisory and acceptance role under the facts, but against Appellant who never served in that role.**

*Summary of Argument*

Even if the CMT in this case were CME, the "supervising engineer" under that logic was not Appellant, but Naismith Engineering, the actual supervising engineer for the Project.

*Argument.*

The CME Advisory Opinion does *__not__* state that CMT becomes CME under a public project, and therefore, an engineer must perform the sampling and testing of construction materials. Rather, it states "When constructing public works, the state

23

or *political subdivision* of the state *must ensure* that the engineering construction is performed under *the direct <u>supervision</u> of a licensed engineer.* . . . This *supervision* must include the *direct supervision of materials testing* and engineering necessary . . . for verification of compliance with construction plans . . . ." C.R. at 390. Thus, the supervising engineer may use an outside certified lab if the work is performed under that engineer's supervision. In this case, the County arranged this Project with a private engineering firm (Naismith Engineering) as the supervising engineer and a private lab (TSI Labs) as the sampling and testing lab that the supervising engineer would use. The acceptability of this type of arrangement for a public works project is recognized in the CME Advisory Opinion, which states "For public entities with staff engineers [or private engineers under contract with public entities] who make acceptance decisions, the engineers must *be in a position to determine if the testing and inspection services are properly performed* at a frequency the provides confidence that the materials and work meet (or reasonably conform in some cases) the contract requirements or standards of practice" with the inserted factual situation being a valid and frequent standard arrangement for public entities without staff engineers. As the next sentence states, this supervision and acceptance determinations, whether by a staff engineer or a contracted engineer, "requires *reviewing* qualifications, *monitoring* inspection and testing services and *review* of

24

test and inspection data." Again, the standard is that the engineer *supervise* and *review* the sampling and testing and not *perform* the sampling and testing.

Therefore, for this Project, the supervising engineers were Naismith Engineering and not an professional engineer who was an employee of TSI Labs and who was not even working in the TSI Labs facility in San Patricio County, but who just happened to be an employee of a multi-office corporation that has its main office in Victoria, Texas. Moreover, TSI Labs was a testing lab that submitted a CMT proposal on sampling and testing only, which services are *not* subject to the PSPA.

Thus, the supervising engineers for this Project, and thus for the CMT for the Project, was Naismith Engineering, the engineering firm that the County selected following the PSPA procedures. Consequently, Appellant was the wrong engineer about which the complainant, Mark Rock, P.E., of Rock Engineering and Testing (the losing bidder who found Appellant on the rolls of the TBPE), should have complained and against whom the TBPE should take action, if any. An analogous view is that the TBPE did not have *in personam* jurisdiction over Appellant because he did not have the proper contacts with the Project, including any agreement with the County to provide "engineering" for the Project at any time.

Even setting aside the several lack of authority and other legal defects in the TBPE decisions in this case, its decision is not supported by any substantial evidence

25

and is arbitrary and capricious because the agency sought enforcement against the wrong supervising engineer.

## PRAYER

For the reasons stated above, Appellant Raghunath Dass, Ph.D., P.E. prays that the Court find that:

(1) the Amended Final Order was and is void;

(2) the Texas Engineering Practices Act does not grant the Texas Board of Professional Engineers the authority to regulate construction materials testing;

(3) any actions of the Texas Board of Professional Engineers to assert authority or jurisdiction over construction materials testing is void and unenforceable;

(4) neither the Texas Engineering Practices Act nor the Professional Services Procurement Act convert construction materials testing into construction material testing when such testing is part of a public work project;

(5) the Texas Board of Professional Engineers' 2005/2009 CME Policy Advisory Opinion is an enforceable "rule"; and

(6) even if the construction material testing that TSI Labs performed under its contract with the San Patricio County was actually construction materials engineering, then the supervising engineer was the "project engineers" for the County, and not Appellant;

26

and that the Court reverse all orders of the Texas Board of Professional Engineers that affect Appellant in the agency's Case No. D-31480.

Respectfully submitted this 4th day of March, 2015.

JIMMY ALAN HALL, PLLC
4600 Mueller Boulevard, Suite 2121
Austin, Texas 78723-3294
Telephone: 512-722-3190
Telecopier: 512-857-9195
jahall@fbjah.com

*/s/ Jimmy Alan Hall*

JIMMY ALAN HALL
Texas Bar No.08759800

ATTORNEYS FOR APPELLANT RAGHUNATH DASS, PH.D., P.E.

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 5,654 words (excluding the caption, table of contents, table of authorities, signature, proof of service, certification, and certificate of compliance). This is a computer generated document created in WordPerfect X6, using 14-point typeface for all text, except for footnotes which are 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

/s/ Jimmy Alan Hall
JIMMY ALAN HALL

## CERTIFICATE OF SERVICE

I, Jimmy Alan Hall, do hereby certify that a true and correct copy of the foregoing document, with appendix, was served by electronic service on the following parties or attorneys of record on the 5th day of March 2015.

Jennifer L. Hopgood
Assistant Attorney General
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 936-1660
Facsimile: (512) 320-0167
jennifer.hopgood@texasattorneygeneral.gov

/s/ Jimmy Alan Hall
JIMMY ALAN HALL

# APPENDIX TO APPELLANT'S BRIEF
## TABLE OF CONTENTS

| TAB | Document |
|-----|----------|
| 1 | Order Granting Defendant's Motion for Summary Judgment, June 24, 2014 (C.R. at 465) |
| 2 | Act of May 15, 1997, 75th Leg., R.S., 1997 Tex. Gen. Laws 344. Introduced and Enrolled Versions (S.B. 623) |
| 3 | Texas Government Code<br>§ 2001.003<br>§ 2001.174<br>§ 2001.1775<br>§ 2254.002<br>§ 2254.003 |
| 4 | Texas Occupations Code<br>§ 1001.003<br>§ 1001.202<br>§ 1001.203<br>§ 1001.301<br>§ 1001.407 |
| 5 | Texas Board of Professional Engineer Policy Advisory Opinion Regarding Construction Materials Engineering (August 20, 2009). (A.R. Ex. 2) |
| 6 | T.S.I. Laboratories, Inc. February 18, 2009 bid proposal to San Patricio County (C.R. at 392-94) |
| 7 | Excerpts from SOAH Transcript of Contested Case Hearing on April 18, 2012; Case No. D-31480; SOAH Docket No. 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 |
| 8 | Texas Board of Professional Engineer Amended Final Order (November 21, 2013) (C.R. at 62-66, 367-69) |

| TAB | Document |
|---|---|
| 9 | Appellant's Motion to Withdraw Appeal; No. 03-13-0711-CV (C.R. at 370-72) |
| 10 | Texas Court of Appeals, Third District, Judgment Rendered December 18, 2013, Dismissed on Appellant's Motion (C.R. at 379) |

# TAB
# 1

Notice sent:  Final   Interlocutory   None
Disp Parties:_____
Disp code:  CVD / CLS _____
Redact_____
Judge_____  Clerk_____

Filed in The District Court
of Travis County, Texas

JUN 2 5 2014

At_____ 1:51 PM.
Amalia Rodriguez-Mendoza, Clerk

CAUSE NO. D-1-GN-14-000568

| | | |
|---|---|---|
| RAGHUNATH DASS, P.E., *Plaintiff,* | § § § | IN THE DISTRICT COURT |
| v. | § § | |
| | § | TRAVIS COUNTY, TEXAS |
| TEXAS BOARD OF PROFESSIONAL ENGINEERS, *Defendant.* | § § § § | 201ˢᵗ JUDICIAL DISTRICT |

## ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

The Court considered on submission the Motion of Defendant Texas Board of Professional Engineers for Summary Judgment and the response filed by the Plaintiff.

After considering the motions, the admissible summary judgment evidence, and the matters and authorities presented, the Court finds that the Defendant's Motion should be and is hereby granted.

It is therefore ORDERED, ADJUDGED, AND DECREED that Defendant's Motion for Summary Judgment is GRANTED in all respects.

All relief not expressly granted is herein DENIED. This Order constitutes and is intended to be a final and appealable judgment, disposing of all parties and claims.

SIGNED this __25__ day of __JUNE__, 2014.

The Honorable Stephen Yelenosky

465

# TAB
# 2

A BILL TO BE ENTITLED

AN ACT

relating to the regulation of the practice of engineering; providing penalties.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 1.1, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 1.1. In recognition of the vital impact which the rapid advance of knowledge of the mathematical, physical and engineering sciences as applied in the practice of engineering is having upon the lives, property, economy and security of our people and the national defense, it is the intent of the Legislature, in order to protect the public health, safety and welfare, that the privilege of practicing engineering be entrusted only to those persons duly licensed[, registered] and practicing under the provisions of this Act and that there be strict compliance with and enforcement of all the provisions of this Act, and, in order that the state and members of the public may be able to identify those duly authorized to practice engineering in this state and fix responsibility for work done or services or acts performed in the practice of engineering, only licensed [and registered] persons shall practice, offer or attempt to practice engineering or call themselves or be otherwise designated as any kind of an "engineer" or in any manner make use of the term "engineer" as a professional, business or commercial identification, title, name, representation, claim or asset, and all the provisions of this Act shall be liberally construed and applied to carry out such legislative intent. In furtherance of such intent and purpose of the Legislature, the practice of engineering is hereby declared a learned profession to be practiced and regulated as such, and its practitioners in this state shall be held accountable to the state and members of the public by high professional standards in keeping with the ethics and practices of the other learned professions in this state. There is specifically reserved to graduates of all

public universities recognized by the American Association of Colleges and Universities the right to disclose any college degrees received by such individual and use the word Graduate Engineer on his stationery, business cards, and personal communications of any character.

SECTION 2.  Section 1.2, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 1.2. From and after the effective date of this Act, unless duly licensed [and registered] in accordance with the provisions of this Act, no person in this state shall:

(1)  Practice, continue to practice, offer or attempt to practice engineering or any branch or part thereof.

(2)  Directly or indirectly, employ, use, cause to be used or make use of any of the following terms or any combinations, variations or abbreviations thereof as a professional, business or commercial identification, title, name, representation, claim, asset or means of advantage or benefit:  "engineer," "professional engineer," "licensed engineer," "registered engineer," "registered professional engineer," "licensed professional engineer," "engineered."

(3)  Directly or indirectly, employ, use, cause to be used or make use of any letter, abbreviation, word, symbol, slogan, sign or any combinations or variations thereof, which in any manner whatsoever tends or is likely to create any impression with the public or any member thereof that any person is qualified or authorized to practice engineering unless such person is duly licensed[, registered] under and practicing in accordance with the provisions of this Act.

(4)  Receive any fee or compensation or the promise of any fee or compensation for performing, offering or attempting to perform any service, work, act or thing which is any part of the practice of engineering as defined by this Act.

Within the intent and meaning and for all purposes of this Act, any person, firm, partnership, association or corporation which shall do, offer or attempt to do any one or more of the acts or things set forth in numbered paragraphs (1), (2), (3) or (4) of this Section 1.2 shall be conclusively presumed and regarded as engaged in the practice of engineering.

SECTION 3.  Section 1.3, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 1.3. Every person licensed [and registered] by the Board to engage in the practice of engineering shall in the professional use of his name on any sign, directory, listing, contract, document, pamphlet, stationery, letterhead, advertisement, signature, or any other such means of professional identification, written or printed, use one of the following legally required identifications:  Engineer, Professional Engineer or P. E.

SECTION 4.  Sections 2(1), (3), and (4), The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), are amended to read as follows:

(1)  "Board" shall mean the Texas [State] Board of [Registration for] Professional Engineers, provided for by this Act.

(3)  "Engineer," "professional engineer," "registered engineer," "registered professional engineer," [or] "licensed professional engineer," or "licensed engineer" shall mean a person who has been duly licensed [and registered] by the Board to engage in the practice of engineering in this state.

(4)  "Practice of engineering," or "practice of professional engineering" shall mean any service or creative work, either public or private, the adequate performance of which requires engineering education, training and experience in the application of special knowledge or judgment of the mathematical, physical, or engineering sciences to such services or creative work.

The term includes consultation, investigation, evaluation, analysis, planning, program management, providing an expert engineering opinion or testimony, testing or evaluating materials for construction and other engineering uses, and mapping; design, conceptual design, or conceptual design coordination of engineering works and systems; development or optimization of plans and specifications for engineering works and systems; planning the use or alteration of land and water or the design or analysis of works or systems for the use or alteration of land and water; teaching advanced engineering subjects; performing engineering surveys and

studies; construction, alteration, or repair of real property; preparation of operating and maintenance manuals; and review of the construction or installation of engineered works to monitor compliance with drawings and specifications.

The activities included in the practice of engineering include services or work performed for a public or private entity in connection with utilities, structures, buildings, machines, equipment, processes, systems, works, projects, and industrial or consumer products or equipment of a mechanical, electrical, electronic, chemical, hydraulic, pneumatic, geotechnical, or thermal nature and include other professional services necessary for the planning, progress, and completion of any engineering service.

In this subdivision:

(A)  "Design coordination" includes the review and coordination of technical submissions prepared by others, including the work of other professionals working under the direction of an engineer with due professional regard for the professional abilities of all parties involved in a multidisciplinary effort.

(B)  "Engineering surveys" includes all survey activities required to support the sound conception, planning, design, construction, maintenance, and operation of an engineered project, but does not include the surveying of real property and other activities regulated under the Professional Land Surveying Practices Act (Article 5282c, Vernon's Texas Civil Statutes).

SECTION 5.  Section 3, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 3.  TEXAS [STATE] BOARD OF [REGISTRATION FOR] PROFESSIONAL ENGINEERS--APPOINTMENT OF MEMBERS--TERMS. The Texas [A State] Board of [Registration for] Professional Engineers is hereby created whose duty it shall be to administer the provisions of this Act.  The Board shall consist of six (6) professional engineers and three (3) representatives of the general public, who shall be appointed by the Governor of the State, without regard to the race, creed, sex, religion, or national origin of the appointees and with the

advice and consent of the Senate.  At the expiration of the term of each member first appointed, his successor shall be appointed by the Governor of the State and he shall serve for a term of six (6) years or until his successor shall be appointed and qualified.  Before entering upon the duties of his office each member of the Board shall take the Constitutional Oath of office and the same shall be filed with the Secretary of State.

SECTION 6.  Section 3a, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 3a.  SUNSET PROVISION. The Texas [State] Board of [Registration for] Professional Engineers is subject to Chapter 325, Government Code (Texas Sunset Act).  Unless continued in existence as provided by that chapter, the board is abolished and this Act expires September 1, 2003.

SECTION 7.  Section 4(d), The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

(d)  The Board by majority vote may limit the participation of general public members in the evaluations of applications for licensure [registration] except in those instances in which the evaluations take place at an official meeting of the Board.

SECTION 8.  Sections 8(a) and (b), The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), are amended to read as follows:

(a)  In addition to any other powers and duties, the Board shall have the authority and power to make and enforce all rules and regulations and bylaws consistent with this Act as necessary for the performance of its duties, the governance of its own proceedings, and the regulation of the practice of engineering in this state and may establish standards of conduct and ethics for engineers in keeping with the purposes and intent of this Act and to insure strict compliance with and enforcement of this Act.  The violation by any engineer of any provision of this Act or any rule or regulation of the Board shall be a sufficient cause to suspend or revoke the license [certificate of registration] of or to issue a formal or informal reprimand to such engineer.  In addition to any other action, proceeding or remedy authorized by law, the Board shall have the

right to institute an action in its own name in a district court of Travis County against any individual person to enjoin any violation of any provision of this Act or any rule or regulation of the Board and in order for the Board to sustain such action it shall not be necessary to allege or prove, either that an adequate remedy at law does not exist, or that substantial or irreparable damage would result from the continued violation thereof.  Either party to such action may appeal to the appellate court having jurisdiction of said cause.  The Board shall not be required to give any appeal bond in any cause arising under this Act.  The Attorney General shall represent the Board in all actions and proceedings to enforce the provisions of this Act.

(b)  The Board may promulgate rules restricting competitive bidding.  The Board may not promulgate rules restricting advertising by a license holder [registrants] except to prohibit false, misleading, or deceptive practices by the license holder [registrants].  The Board may not include in its rules to prohibit false, misleading, or deceptive practices by a person regulated by the Board a rule that:

(1)  restricts the person's use of any medium for advertising;

(2)  restricts the person's personal appearance or use of his personal voice in an advertisement;

(3)  relates to the size or duration of an advertisement by the person; or

(4)  restricts the person's advertisement under a trade name.

SECTION 9.  Section 10(a), The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

(a)  The Board shall keep a record of its proceedings and register of all applications for licensure [registration], which register shall show (a) the name, age and residence of each applicant; (b) the date of the application; (c) the place of business of such applicant; (d) his educational and other qualifications; (e) whether or not an examination was required; (f) whether the applicant was rejected; (g) whether a license [certificate of registration] was granted; (h) the date of the action of the Board; and (i) such other information as may be deemed necessary by the Board.

The records of the Board shall be available to the public at all times and shall be prima facie evidence of the proceedings of the Board set forth therein, and a transcript thereof, duly certified by the Secretary of the Board under seal, shall be admissible in evidence with the same force and effect as if the original was produced.

SECTION 10.  Section 11, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 11.  ROSTER OF LICENSED [REGISTERED] ENGINEERS. A roster showing the names and places of business of all licensed [registered] professional engineers shall be prepared and published by the Board each biennium at a time determined by the Board. Copies of this roster shall be furnished without charge to any engineer licensed [registered] by the Board on the written request of the engineer, placed on file with the Secretary of State, and furnished to any person upon written request who tenders a reproduction fee set by the Board.

SECTION 11.  Section 12, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 12.  GENERAL REQUIREMENTS FOR LICENSURE [REGISTRATION]. (a)  The following shall be considered as minimum evidence satisfactory to the Board that the applicant is qualified for licensure [registration] as a professional engineer:

(1)  graduation from an approved curriculum in engineering that is approved by the Board as of satisfactory standing, passage of the examination requirements prescribed by the Board, and a specific record of an additional four (4) years or more of active practice in engineering work, of a character satisfactory to the Board, indicating that the applicant is competent to be placed in responsible charge of such work; or

(2)  graduation from an engineering or related science curriculum at a recognized institution of higher education, other than a curriculum approved by the Board under Subdivision (1) of this subsection, passage of the examination requirements prescribed by the Board, and a specific record of at least eight (8) years of active practice in engineering work of a character

satisfactory to the Board and indicating that the applicant is competent to be placed in responsible charge of such work.

(b)  Provided, that no person shall be eligible for licensure [registration] as a professional engineer who is not of good character and reputation; and provided further, that any engineer licensed [registered] under this Act shall be eligible to hold any appointive engineering position with the State of Texas.

(c)  In considering the qualifications of applicants, responsible charge of engineering teaching may be construed as responsible charge of engineering work.  The mere execution, as a contractor, of work designed by a professional engineer, or the supervision of the construction of such work as foreman or superintendent shall not be deemed to be active practice in engineering work.

(d)  Any person having the necessary qualifications prescribed in this Act to entitle him to licensure [registration] shall be eligible for such licensure [registration] though he may not be practicing at the time of making his application.

(e)  The Board may adopt rules providing for the waiver of all or part of the examination requirement under this Act to permit the issuance or reissuance of a license to an applicant. Before the Board may waive the requirement, the Board must find that the applicant possesses sufficient qualifications to justify the waiver of all or part of the examination requirement and that issuance or reissuance of the license to the applicant does not pose a threat to the public health, safety, or welfare.

SECTION 12.  Sections 13(a), (b), and (d), The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), as amended by Chapters 947 and 1090, Acts of the 71st Legislature, Regular Session, 1989, are amended to read as follows:

(a)  Applications for licensure [registration] shall be on forms prescribed and furnished by the Board, be sworn, and contain:

(1)  statements showing personal information about the applicant, as required by Board rule, and describing the applicant's education;

(2)  a detailed summary of the applicant's actual engineering work;

(3)  a statement describing any earlier professional engineering registrations or licenses by or denials, revocations, or suspensions of professional engineering registrations or licenses of the applicant;

(4)  a statement describing any criminal offenses of which the applicant has been convicted; and

(5)  not less than five (5) references from individuals with personal knowledge of the applicant's character, reputation, and general suitability for licensure [registration], of whom three (3) or more shall be licensed [registered] engineers having personal knowledge of the applicant's engineering experience.

(b)  The Board shall establish reasonable and necessary fees for the administration of this Act in amounts not to exceed:

1.  License [Registration] fee$50

2.  Annual renewal fee 75

3.  Reciprocal license [registration] fee 50

4.  Duplicate license [certificate of registration] 5

5.  Engineer-in-training certificate 15

6.  Roster of engineers  10

7.  Examination fee120 [100]

(d)  The Board by rule may adopt reduced licensure [registration] and annual renewal fees for licensed [registered] engineers who are at least 65 years of age.

SECTION 13.  Sections 13B(a) and (c), The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), are amended to read as follows:

(a) Each of the following fees imposed by or under another section of this Act is increased by $200:

(1)  license [registration] fee;

(2)  annual renewal fee; and

(3)  reciprocal license [~~registration~~] fee.

(c)  Subsection (a) does not apply to a licensed [~~registered~~] professional engineer who meets the qualifications for an exemption from licensure [~~registration~~] under Section 20(g) or (h) of this Act but who does not claim that exemption.

SECTION 14.  Section 14(a), The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

(a)  On payment of the examination fee, oral or written examinations shall be administered to qualified applicants at such time and place as the Board shall determine.  The scope of the examinations and the methods of procedure shall be prescribed by the Board with special reference to the applicant's ability to design and supervise engineering works, which shall insure the safety of life, health, and property.  Examinations shall be given for the purpose of determining the qualifications of applicants for licensure [~~registration~~] in professional engineering.  The Board may permit reexamination of an applicant on payment of an appropriate reexamination fee in an amount set by the Board.

SECTION 15.  Section 15, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 15.  LICENSES [~~CERTIFICATES~~], SEALS. (a)  The Board shall issue a license [~~certificate of registration~~] upon payment of the license [~~registration~~] fee as provided for in this Act, to any applicant, who, in the opinion of the Board, has satisfactorily met all the requirements of this Act.  The license [~~In case of a registered engineer, the certificate~~] shall authorize the practice of professional engineering.  A license [~~Certificates of registration~~] shall show the full name of the license holder [~~registrant~~], shall have a serial number, and shall be signed by the Chairman and the Secretary of the Board under seal of the Board.  The issuance of a license [~~certificate of registration~~] by this Board shall be evidence that the person named therein is entitled to all rights and privileges of a licensed [~~registered~~] professional engineer, while the said license [~~certificate~~] remains unrevoked or unexpired.

(b)  Each license holder [registrant] hereunder shall upon licensure [registration] obtain a seal of the design authorized by the Board, bearing the license holder's [registrant's] name and the legend "Licensed Professional Engineer" or "Registered Professional Engineer".  Plans, specifications, plats, and reports issued by a license holder [registrant] must include the license holder's [registrant's] seal affixed to the document.  It shall be unlawful for any one to affix a seal on any document if the license [certificate] of the license holder [registrant] named thereon has expired or has been suspended or revoked, unless said license [certificate] shall have been renewed or reissued.

(c)  This Act applies to all engineering practiced in this state that is not exempted under this Act.  A public official of this state or of a political subdivision of this state who is charged with the enforcement of laws, ordinances, codes, or regulations that affect the practice of engineering may only accept plans, specifications, and other related documents prepared by a licensed engineer [registered engineers], as evidenced by the seal of the engineer.  A public official shall report violations of this Act to the proper authorities.

SECTION 16.  Section 16, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 16.  EXPIRATIONS AND RENEWALS. (a)  It shall be the duty of the Board to notify every person licensed [registered] under this Act of the date of the expiration of his license [certificate] and the amount of the fee that shall be required for its renewal for one year; such notice shall be mailed at least one month in advance of the date of the expiration of said license [certificate] to the last address provided by the license holder [registrant] to the Board.

(b)  A person may renew an unexpired license [certificate of registration] by paying to the Board before the expiration date of the license [certificate of registration] the required renewal fee.

(c)  If a person's license [certificate of registration] has been expired for not longer than 90 days, the person may renew the license [certificate of registration] by paying to the Board the required renewal fee and a penalty fee as set by the Board.

(d)  If a person's license [certificate of registration] has been expired for longer than 90 days but less than two years, the person may renew the license [certificate of registration] by paying to the Board all unpaid renewal fees and a penalty fee as set by the Board.

(e)  If a person's license [certificate of registration] has been expired for two years or longer, the person may not renew the license [certificate of registration].  The person may obtain a new license [certificate of registration] by complying with the requirements and procedures for obtaining an original license [certificate of registration] that are in effect at the time the person applies.

SECTION 17.  Section 16.1, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 16.1.  EXPIRATION DATES OF LICENSES [CERTIFICATES OF REGISTRATION]. The board by rule may adopt a system under which licenses [certificates of registration] expire on various dates during the year, and the dates for reinstatement shall be adjusted accordingly.

SECTION 18.  Section 17, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 17. A firm, or a co-partnership, or a corporation, or a joint stock association may engage in the practice of professional engineering in this State, provided such practice is carried on by only professional engineers licensed [registered] in this State.

SECTION 19.  Section 18, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 18. (a)  No firm, partnership, association, corporation or other business entity shall hold itself out to the public or any member thereof as being engaged in the practice of engineering under any assumed, trade, business, partnership or corporate name or employ, use, cause to be used or make use of in any manner whatsoever any such words or terms as "engineer," "engineering," "engineering services," "engineering company," "engineering, inc.," "professional engineers," "licensed engineer," "registered engineer," "licensed professional

engineer," "registered professional engineer," "engineered," or any combinations, abbreviations or variations thereof, or in combination with any other words, letters, initials, signs or symbols on, in or as a part of, directly or indirectly, any sign, directory, listing, contract, document, pamphlet, stationery, letterhead, advertisement, signature, trade name, assumed name, corporate or other business name unless such firm, partnership, association, corporation or other business entity is actually and actively engaged in the practice of engineering or offering engineering services to the public, and any and all services, work, acts or things performed or done by it which constitute any part of the practice of engineering are either personally performed or done by a licensed [registered] engineer or under the direct [responsible] supervision of a licensed [registered] engineer who is a regular full-time employee of the firm, partnership, association, corporation, or other business entity.

(b) This section does not prohibit a licensed engineer from performing engineering services on a part-time basis.

SECTION 20. Section 19(a), The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

(a) It is unlawful for this State or for any of its political subdivisions, including any county, city, or town, to engage in the construction of any public work involving professional engineering, where public health, public welfare or public safety is involved, unless the engineering plans and specifications and estimates have been prepared by, and the engineering construction is to be executed under the direct supervision of a licensed [registered] professional engineer.

SECTION 21. Section 20, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 20. EXEMPTIONS. The following persons shall be exempt from the licensure [registration] provisions of this Act, provided that such persons are not directly or indirectly represented or held out to the public to be legally qualified to engage in the practice of engineering:

(a)  [A person not a resident of and having no established place of business in this state if that person:

[(1)  has filed an application for registration as a professional engineer with the Board and the application is pending Board action;

[(2)  is legally qualified to practice engineering in another jurisdiction whose requirements for practice are at least as strict as those required by this state; and

[(3)  affixes the person's seal from the jurisdiction in which the person is legally qualified to practice on all work completed while the application for registration to practice in this state is pending.

[(b)  A person who has recently become a resident of this state if that person:

[(1)  has filed an application for registration as a professional engineer with the Board and the application is pending Board action;

[(2)  is legally qualified to practice engineering in another jurisdiction whose requirements for practice are at least as strict as those required by this state; and

[(3)  affixes the person's seal from the jurisdiction in which the person is legally qualified to practice on all work completed while the application for registration to practice in this state is pending.

[(c)]  An employee or a subordinate of a person holding a license [certificate of registration] under this Act[, or any employee of a person exempted from registration by classes (a) and (b) of this Section]; provided, his practice does not include responsible charge of design or supervision.

(b) [(d)]  Officers and employees of the Government of the United States while engaged within this state in the practice of the profession of engineering for said Government.

(c) [(e)]  A person doing the actual work of installing, operating, repairing, or servicing locomotive or stationary engines, steam boilers, Diesel engines, internal combustion engines, refrigeration compressors and systems, hoisting engines, electrical engines, air conditioning equipment and systems, or mechanical and electrical, electronic or communications

equipment and apparatus; this Act may not be construed to prevent any citizen from identifying himself in the name and trade of any engineers' labor organization with which he may be affiliated, however, this exemption may not be construed to permit any person other than a licensed [registered] professional engineer to affix his signature to engineering plans, or specifications and may not be construed to permit a person to use the term "engineer" or "engineering" in any manner prohibited by this Act.

(d) [(f)]  A person, firm, partnership, joint stock association or private corporation, erecting, constructing, enlarging, altering or repairing, or drawing plans and specifications for:  (1) any private dwelling, or apartments not exceeding eight units per building for one story buildings, or apartments not exceeding four units per building and having a maximum height of two stories, or garages or other structures pertinent to such buildings; or (2) private buildings which are to be used exclusively for farm, ranch or agricultural purposes, or used exclusively for storage of raw agricultural commodities; or (3) other buildings, except public buildings included under Section 19 of this Act, having no more than one story and containing no clear span between supporting structures greater than 24 feet on the narrow side and having a total floor area not in excess of five thousand square feet; provided that on unsupported spans greater than 24 feet on such buildings only the trusses, beams, or other roof supporting members need to be engineered or pre-engineered; provided that no representation is made or implied that engineering services have been or will be offered to the public.

(e) [(g)]  Any regular full time employee of a private corporation or other private business entity who is engaged solely and exclusively in performing services for such corporation and/or its affiliates; provided, such employee's services are on, or in connection with, property owned or leased by such private corporation and/or its affiliates or other private business entity, or in which such private corporation and/or its affiliates or other business entity has an interest, estate or possessory right, or whose services affect exclusively the property, products, or interests of such private corporation and/or its affiliates or other private business entity; and, provided further, that such employee does not have the final authority for the

approval of, and the ultimate responsibility for, engineering designs, plans or specifications pertaining to such property or products which are to be incorporated into fixed works, systems, or facilities on the property of others or which are to be made available to the general public. This exemption includes the use of job titles and personnel classifications by such persons not in connection with any offer of engineering services to the public, providing that no name, title, or words are used which tend to convey the impression that an unlicensed person is offering engineering services to the public.

(f) [(h)] Any regular full time employee of a privately owned public utility or cooperative utility and/or affiliates who is engaged solely and exclusively in performing services for such utility and/or its affiliates; provided, that such employee does not have the final authority for the approval of, and the ultimate responsibility for engineering designs, plans or specifications to be incorporated into fixed works, systems, or facilities on the property of others or which are to be made available to the general public.  This exemption includes the use of job titles and personnel classifications by such persons not in connection with any offer of engineering services to the public, providing that no name, title, or words are used which tend to convey the impression that an unlicensed person is offering engineering services to the public.

(g) [(i)] Qualified scientists engaged in scientific research and investigation of the physical or natural sciences, including the usual work and activities of meteorologists, seismologists, geologists, chemists, geochemists, physicists and geophysicists.

(h) [(j)] Nothing in this Act shall be construed or applied so as to prohibit or in any way restrict any person from giving testimony or preparing exhibits or documents for the sole purpose of being placed in evidence before any administrative or judicial tribunal of competent jurisdiction.

(i) [(k)] Nothing in this Act shall apply to any agricultural work being performed in carrying out soil and water conservation practices.

(j) [(l)] This Act shall not be construed as applying to operating telephone companies and/or affiliates or their employees in respect to any plans, designs, specifications, or

services which relate strictly to the science and art of telephony.  This exemption includes the use of job titles and personnel classifications by such persons not in connection with any offer of engineering services to the public, providing that no name, title, or words are used which tend to convey the impression that an unlicensed person is offering engineering services to the public.

SECTION 22.  The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes) is amended by adding Section 20A to read as follows:

Sec. 20A.  TEMPORARY OR PROVISIONAL LICENSE. The Board may adopt rules providing standards and procedures for the issuance of a temporary or provisional license under this Act.

SECTION 23.  Section 21, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 21.  LICENSURE [REGISTRATION] BY NONRESIDENTS. A person who holds a valid certificate of registration or license issued to him by proper authority of any state or territory or possession of the United States, the District of Columbia, or any foreign country may apply for licensure [registration] in this state.

SECTION 24.  Section 22, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 22.  DENIAL, REVOCATION, SUSPENSION, PROBATION, REPRIMAND, RE-ISSUANCE AND REFUSAL OF LICENSE; STATUS REVIEW [CERTIFICATE]. (a)  The Board shall revoke, suspend, or refuse to renew a license [registration], shall reprimand a license holder [registrant], may deny an application for licensure [registration], or may probate any suspension of any license holder [registrant] who is determined by the Board to be censurable for:

(1)  The practice of any fraud or deceit in obtaining a license [certificate of registration];

(2)  Any gross negligence, incompetency, or misconduct in the practice of professional engineering as a licensed [registered] professional engineer;

(3)  Any documented instance of retaliation by an applicant against an individual who has served as a reference for that applicant;

(4)  A violation of this Act or a Board rule; or

(5)  A failure to timely provide plans and specifications to the Texas Department of Licensing and Regulation as required by Article 9102, Revised Statutes.

(b)  Any person who may feel himself aggrieved by reason of the revocation of his license [certificate of registration] by the Board, as hereinabove authorized, shall have the right to file suit in the district court of the county of his residence, or of the county in which the alleged offense relied upon as grounds for revocation took place, to annul or vacate the order of the Board revoking the license [certificate of registration].

(c)  If the Board proposes to suspend or revoke a person's license [certificate of registration], the person is entitled to a hearing before the Board.  Proceedings for the suspension or revocation of a license [certificate of registration] are governed by  Chapter 2001, Government Code [the Administrative Procedure and Texas Register Act, as amended (Article 6252-13a, Vernon's Texas Civil Statutes)].

(d)  The Board, for reasons it may deem sufficient, may re-issue a license [certificate of registration] to any person whose license [certificate] has been revoked, provided six (6) or more members of the Board vote in favor of such re-issuance.  A new license [certificate of registration], to replace any license [certificate] revoked, lost, destroyed, or mutilated, may be issued, subject to the rules of the Board.

(e)  The Board may adopt rules permitting the Board to review the status of a license holder who the Board believes may have been issued a license through fraud or error or who may constitute a threat to the public health, safety, or welfare.  The Board may suspend or revoke a license held by a person whose status is reviewed under this subsection.

SECTION 25.  Section 22A, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 22A.  INFORMATION ABOUT COMPLAINTS. (a)  The Board shall keep an information file about each complaint filed with the Board relating to a license holder [registrant].

(b)  If a written complaint is filed with the Board relating to a license holder [registrant], the Board, at least as frequently as quarterly, shall notify the parties to the complaint of the status of the complaint until final disposition unless the notification would jeopardize an undercover investigation.

(c)  The Board shall adopt rules that permit the Board to receive and investigate anonymous and confidential complaints against license holders or any other person who may have violated this Act.  The Board shall protect the anonymity of a person who makes an anonymous complaint and maintain the confidentiality of the complaint during the investigation of the complaint.

SECTION 26.  The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes) is amended by adding Section 22C to read as follows:

Sec. 22C.  (a) The Board may impose an administrative penalty against a person licensed under this Act or any other person or entity that violates this Act or a rule or order adopted under this Act.  The Board may include in the amount of the administrative penalty the actual costs of investigating and prosecuting the violation.

(b)  The penalty for a violation may be in an amount not to exceed $3,000. Each day a violation continues or occurs is a separate violation for purposes of imposing a penalty.

(c)  The amount of the penalty shall be based on:

(1)  the seriousness of the violation, including the nature, circumstances, extent, and gravity of any prohibited acts, and the hazard or potential hazard created to the health, safety, or economic welfare of the public;

(2)  the economic harm to property or the environment caused by the violation;

(3)  the history of previous violations;

(4)  the amount necessary to deter future violations;

(5)  efforts or resistance to efforts to correct the violation; and

(6)  any other matter that justice may require.

(d)  The Board shall adopt rules of procedure for the assessment of an administrative penalty by the Board.  Rules adopted under this section must conform to the requirements of Chapter 2001, Government Code.

(e)  Within 30 days after the date the Board's order becomes final as provided by Section 2001.144, Government Code, the person shall:

(1)  pay the amount of the penalty;

(2)  pay the amount of the penalty and file a petition for judicial review contesting the occurrence of the violation, the amount of the penalty, or both the occurrence of the violation and the amount of the penalty; or

(3)  without paying the amount of the penalty, file a petition for judicial review contesting the occurrence of the violation, the amount of the penalty, or both the occurrence of the violation and the amount of the penalty.

(f)  Within the 30-day period, a person who acts under Subsection (e)(3) of this section may:

(1)  stay enforcement of the penalty by:

(A)  paying the amount of the penalty to the court for placement in an escrow account; or

(B)  giving to the court a supersedeas bond that is approved by the court for the amount of the penalty and that is effective until all judicial review of the Board's order is final; or

(2)  request the court to stay enforcement of the penalty by:

(A)  filing with the court a sworn affidavit of the person stating that the person is financially unable to pay the amount of the penalty and is financially unable to give the supersedeas bond; and

(B)  giving a copy of the affidavit to the executive director by certified mail.

(g)  On receipt by the director of a copy of an affidavit under Subsection (f)(2) of this section, the director may file with the court, within five days after the date the copy is received, a contest to the affidavit.  The court shall hold a hearing on the facts alleged in the affidavit as soon as practicable and shall stay the enforcement of the penalty on finding that the alleged facts are true.  The person who files an affidavit has the burden of proving that the person is financially unable to pay the amount of the penalty and to give a supersedeas bond.

(h)  If the person does not pay the amount of the penalty and the enforcement of the penalty is not stayed, the director may refer the matter to the attorney general for collection of the amount of the penalty.

(i)  Judicial review of the order of the Board:

(1)  is instituted by filing a petition as provided by Subchapter G, Chapter 2001, Government Code; and

(2)  is under the substantial evidence rule.

(j)  If the court sustains the occurrence of the violation, the court may uphold or reduce the amount of the penalty and order the person to pay the full or reduced amount of the penalty. If the court does not sustain the occurrence of the violation, the court shall order that no penalty is owed.

(k)  When the judgment of the court becomes final, the court shall proceed under this subsection.  If the person paid the amount of the penalty and if that amount is reduced or is not upheld by the court, the court shall order that the appropriate amount plus accrued interest be remitted to the person. The rate of the interest is the rate charged on loans to depository institutions by the New York Federal Reserve Bank, and the interest shall be paid for the period beginning on the date the penalty was paid and ending on the date the penalty is remitted.  If the person gave a supersedeas bond and if the amount of the penalty is not upheld by the court, the court shall order the release of the bond.  If the person gave a supersedeas bond and if the

amount of the penalty is reduced, the court shall order the release of the bond after the person pays the amount.

(l)  A penalty collected under this section shall be remitted to the comptroller for deposit in the general revenue fund, except that the portion of the penalty that represents the costs of the Board in investigating and prosecuting the violation shall be remitted to the Board as reimbursement for performance of the Board's regulatory functions.

(m)  All proceedings under this section are subject to Chapter 2001, Government Code.

SECTION 27.  Section 23(a), The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

(a)  Any person who shall practice, or offer to practice, the profession of engineering in this State without being licensed [registered] or exempted from licensure [registration] in accordance with the provisions of this Act, or any person presenting or attempting to use as his own the license [certificate of registration] or the seal of another, or any person who shall give any false or forged evidence of any kind to the Board or to any member thereof in obtaining a license [certificate of registration], or any person who shall violate any of the provisions of this Act, commits an offense.  An offense under this subsection is a Class A misdemeanor.

SECTION 28.  Section 26, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 26.  CONFIDENTIALITY OF CERTAIN INFORMATION. A statement made by a person providing a reference for an applicant and other pertinent information compiled by or submitted to the Board relating to an applicant for licensure [registration] under this Act is privileged and confidential and may be used only by the Board or employees or agents of the Board who are directly involved in the application or licensure [registration] process.  The information is not subject to discovery, subpoena, or other disclosure.

SECTION 29.  The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes) is amended by adding Section 27 to read as follows:

Sec. 27.  INVESTIGATORS. (a)  The Board may employ investigators as the Board considers necessary to enforce this Act and may commission those investigators as peace officers.  An investigator employed by the Board as a peace officer must meet the requirements for peace officers imposed under Chapter 415, Government Code.  If the Board elects to commission peace officers, the Board shall appoint an investigator who is commissioned as a peace officer and who is qualified by training and experience in law enforcement to supervise, direct, and administer the activities of the commissioned investigators.

(b)  An investigator employed by the Board may request the assistance of state and local law enforcement officers in conducting an investigation authorized by this Act.

SECTION 30.  Article 2.12, Code of Criminal Procedure, as amended by Chapters 621 and 729, Acts of the 74th Legislature, Regular Session, 1995, is amended to read as follows:

Art. 2.12.  WHO ARE PEACE OFFICERS. The following are peace officers:

(1)  sheriffs and their deputies;

(2)  constables and deputy constables;

(3)  marshals or police officers of an incorporated city, town, or village;

(4)  rangers and officers commissioned by the Public Safety Commission and the Director of the Department of Public Safety;

(5)  investigators of the district attorneys', criminal district attorneys', and county attorneys' offices;

(6)  law enforcement agents of the Texas Alcoholic Beverage Commission;

(7)  each member of an arson investigating unit commissioned by a city, a county, or the state;

(8)  officers commissioned under Section 37.081, Education Code, or Subchapter E, Chapter 51, Education Code;

(9)  officers commissioned by the General Services Commission;

(10)  law enforcement officers commissioned by the Parks and Wildlife Commission;

(11)  airport police officers commissioned by a city with a population of more than one million, according to the most recent federal census, that operates an airport that serves commercial air carriers;

(12)  airport security personnel commissioned as peace officers by the governing body of any political subdivision of this state, other than a city described by Subdivision (11), that operates an airport that serves commercial air carriers;

(13)  municipal park and recreational patrolmen and security officers;

(14)  security officers commissioned as peace officers by the State Treasurer;

(15)  officers commissioned by a water control and improvement district under Section 51.132, Water Code;

(16)  officers commissioned by a board of trustees under Chapter 341, Acts of the 57th Legislature, Regular Session, 1961 (Article 1187f, Vernon's Texas Civil Statutes);

(17)  investigators commissioned by the Texas State Board of Medical Examiners;

(18)  officers commissioned by the board of managers of the Dallas County Hospital District, the Tarrant County Hospital District, or the Bexar County Hospital District under Section 281.057, Health and Safety Code;

(19)  county park rangers commissioned under Subchapter E, Chapter 351, Local Government Code;

(20)  investigators employed by the Texas Racing Commission;

(21)  officers commissioned by the State Board of Pharmacy;

(22)  officers commissioned by the governing body of a metropolitan rapid transit authority under Section 451.108, Transportation Code [13, Chapter 141, Acts of the 63rd Legislature, Regular Session, 1973 (Article 1118x, Vernon's Texas Civil Statutes)], or by a regional transportation authority under Section 452.110, Transportation Code [10, Chapter 683, Acts of the 66th Legislature, Regular Session, 1979 ( Article 1118y, Vernon's Texas Civil Statutes)];

(23) [officers commissioned under the Texas High-Speed Rail Act (Article 6674v.2, Revised Statutes);

[(24)] investigators commissioned by the attorney general under Section 402.009, Government Code;

(24) [(25)] security officers and investigators commissioned as peace officers under Chapter 466, Government Code;

(25) [(26)] an officer employed by the Texas Department of Health under Section 431.2471, Health and Safety Code;

(26) [(27)] officers appointed by an appellate court under Subchapter F, Chapter 53, Government Code;

(27) [(28)] officers commissioned by the state fire marshal under Chapter 417, Government Code; [and]

(28) [(29)] an investigator commissioned by the commissioner of insurance under Article 1.10D, Insurance Code;[.]

(29) apprehension specialists commissioned by the Texas Youth Commission as officers under Section 61.0931, Human Resources Code; and

(30) an investigator commissioned by the Texas Board of Professional Engineers under Section 27, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes).

SECTION 31. The change in law made by this Act applies only to a violation of The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes) or a rule adopted under that Act that is reported on or after the effective date of this Act. A violation that is reported before that date is governed by the law in effect on the date the violation was reported, and the former law is continued in effect for that purpose.

SECTION 32. The change in law made by this Act relating to the change in the type of credential issued to practice as an engineer does not affect the validity of a certificate of registration issued before the effective date of this Act.

SECTION 33. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.

AN ACT

relating to the regulation of the practice of engineering; providing penalties.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Section 1.1, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 1.1.  In recognition of the vital impact which the rapid advance of knowledge of the mathematical, physical and engineering sciences as applied in the practice of engineering is having upon the lives, property, economy and security of our people and the national defense, it is the intent of the Legislature, in order to protect the public health, safety and welfare, that the privilege of practicing engineering be entrusted only to those persons duly licensed[, registered] and practicing under the provisions of this Act and that there be strict compliance with and enforcement of all the provisions of this Act, and, in order that the state and members of the public may be able to identify those duly authorized to practice engineering in this state and fix responsibility for work done or services or acts performed in the practice of engineering, only licensed [and registered] persons shall practice, offer or attempt to practice engineering or call themselves or be otherwise designated as any kind of an "engineer" or in any manner make use of the term "engineer" as a professional, business or commercial identification, title, name, representation, claim or asset, and all the provisions of this Act shall be liberally construed and applied to carry out such legislative intent.  In furtherance of such intent and purpose of the Legislature, the practice of engineering is hereby declared a learned profession to be practiced and regulated as such, and its practitioners in this state shall be held accountable to the state and members of the public by high professional standards in keeping with the ethics and practices of the other learned professions in this state.  There is specifically reserved to graduates of all public universities recognized by the American Association of Colleges and Universities the

right to disclose any college degrees received by such individual and use the word Graduate Engineer on his stationery, business cards, and personal communications of any character.

SECTION 2. Section 1.2, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 1.2. From and after the effective date of this Act, unless duly licensed [and registered] in accordance with the provisions of this Act, no person in this state shall:

(1) Practice, continue to practice, offer or attempt to practice engineering or any branch or part thereof.

(2) Directly or indirectly, employ, use, cause to be used or make use of any of the following terms or any combinations, variations or abbreviations thereof as a professional, business or commercial identification, title, name, representation, claim, asset or means of advantage or benefit: "engineer," "professional engineer," "licensed engineer," "registered engineer," "registered professional engineer," "licensed professional engineer," "engineered."

(3) Directly or indirectly, employ, use, cause to be used or make use of any letter, abbreviation, word, symbol, slogan, sign or any combinations or variations thereof, which in any manner whatsoever tends or is likely to create any impression with the public or any member thereof that any person is qualified or authorized to practice engineering unless such person is duly licensed[, registered] under and practicing in accordance with the provisions of this Act.

(4) Receive any fee or compensation or the promise of any fee or compensation for performing, offering or attempting to perform any service, work, act or thing which is any part of the practice of engineering as defined by this Act.

Within the intent and meaning and for all purposes of this Act, any person, firm, partnership, association or corporation which shall do, offer or attempt to do any one or more of the acts or things set forth in numbered paragraphs (1), (2), (3) or (4) of this Section 1.2 shall be conclusively presumed and regarded as engaged in the practice of engineering.

SECTION 3. Section 1.3, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 1.3.  Every person licensed [and registered] by the Board to engage in the practice of engineering shall in the professional use of his name on any sign, directory, listing, contract, document, pamphlet, stationery, letterhead, advertisement, signature, or any other such means of professional identification, written or printed, use one of the following legally required identifications:  Engineer, Professional Engineer or P. E.

SECTION 4.  Subdivisions (1), (3), and (4), Section 2, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), are amended to read as follows:

(1)  "Board" shall mean the Texas [State] Board of [Registration for] Professional Engineers, provided for by this Act.

(3)  "Engineer," "professional engineer," "registered engineer," "registered professional engineer," [or] "licensed professional engineer," or "licensed engineer" shall mean a person who has been duly licensed [and registered] by the Board to engage in the practice of engineering in this state.

(4)  "Practice of engineering," or "practice of professional engineering" shall mean any service or creative work, either public or private, the adequate performance of which requires engineering education, training and experience in the application of special knowledge or judgment of the mathematical, physical, or engineering sciences to such services or creative work.

To the extent the following services or types of creative work meet this definition, the term includes consultation, investigation, evaluation, analysis, planning, engineering for program management, providing an expert engineering opinion or testimony, engineering for testing or evaluating materials for construction and other engineering uses, and mapping; design, conceptual design, or conceptual design coordination of engineering works and systems; development or optimization of plans and specifications for engineering works and systems; planning the use or alteration of land and water or the design or analysis of works or systems for the use or alteration of land and water; teaching advanced engineering subjects; performing engineering surveys and studies; engineering for construction, alteration, or repair of real

property; engineering for preparation of operating and maintenance manuals; and engineering for review of the construction or installation of engineered works to monitor compliance with drawings and specifications.

The activities included in the practice of engineering include services, designs, analyses, or other work performed for a public or private entity in connection with utilities, structures, buildings, machines, equipment, processes, systems, works, projects, and industrial or consumer products or equipment of a mechanical, electrical, electronic, chemical, hydraulic, pneumatic, geotechnical, or thermal nature and include other professional services necessary for the planning, progress, and completion of any engineering service.

In this subdivision:

(A) "Design coordination" includes the review and coordination of technical submissions prepared by others, including the work of other professionals working with or under the direction of an engineer with due professional regard for the abilities of all professional parties involved in a multidisciplinary effort.

(B) "Engineering surveys" includes all survey activities required to support the sound conception, planning, design, construction, maintenance, and operation of an engineered project, but does not include the surveying of real property and other activities regulated under the Professional Land Surveying Practices Act (Article 5282c, Vernon's Texas Civil Statutes).

SECTION 5.  Section 3, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 3.  TEXAS [STATE] BOARD OF [REGISTRATION FOR] PROFESSIONAL ENGINEERS--APPOINTMENT OF MEMBERS--TERMS.  The Texas [A State] Board of [Registration for] Professional Engineers is hereby created whose duty it shall be to administer the provisions of this Act.  The Board shall consist of six (6) professional engineers and three (3) representatives of the general public, who shall be appointed by the Governor of the State, without regard to the race, creed, sex, religion, or national origin of the appointees and with the

advice and consent of the Senate.  At the expiration of the term of each member first appointed, his successor shall be appointed by the Governor of the State and he shall serve for a term of six (6) years or until his successor shall be appointed and qualified.  Before entering upon the duties of his office each member of the Board shall take the Constitutional Oath of office and the same shall be filed with the Secretary of State.

SECTION 6.  Section 3a, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 3a.  SUNSET PROVISION.  The Texas [State] Board of [Registration for] Professional Engineers is subject to Chapter 325, Government Code (Texas Sunset Act).  Unless continued in existence as provided by that chapter, the board is abolished and this Act expires September 1, 2003.

SECTION 7.  Subsection (d), Section 4, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

(d)  The Board by majority vote may limit the participation of general public members in the evaluations of applications for licensure [registration] except in those instances in which the evaluations take place at an official meeting of the Board.

SECTION 8.  Subsections (a) and (b), Section 8, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), are amended to read as follows:

(a)  In addition to any other powers and duties, the Board shall have the authority and power to make and enforce all rules and regulations and bylaws consistent with this Act as necessary for the performance of its duties, the governance of its own proceedings, and the regulation of the practice of engineering in this state and may establish standards of conduct and ethics for engineers in keeping with the purposes and intent of this Act and to insure strict compliance with and enforcement of this Act.  The violation by any engineer of any provision of this Act or any rule or regulation of the Board shall be a sufficient cause to suspend or revoke the license [certificate of registration] of or to issue a formal or informal reprimand to such engineer.  In addition to any other action, proceeding or remedy authorized by law, the Board shall have the

right to institute an action in its own name in a district court of Travis County against any individual person, firm, partnership, or other entity to enjoin any violation of any provision of this Act or any rule or regulation of the Board and in order for the Board to sustain such action it shall not be necessary to allege or prove, either that an adequate remedy at law does not exist, or that substantial or irreparable damage would result from the continued violation thereof. Either party to such action may appeal to the appellate court having jurisdiction of said cause. The Board shall not be required to give any appeal bond in any cause arising under this Act. The Attorney General shall represent the Board in all actions and proceedings to enforce the provisions of this Act.

(b) The Board may promulgate rules restricting competitive bidding. The Board may not promulgate rules restricting advertising by a license holder [registrants] except to prohibit false, misleading, or deceptive practices by the license holder [registrants]. The Board may not include in its rules to prohibit false, misleading, or deceptive practices by a person regulated by the Board a rule that:

(1) restricts the person's use of any medium for advertising;

(2) restricts the person's personal appearance or use of his personal voice in an advertisement;

(3) relates to the size or duration of an advertisement by the person; or

(4) restricts the person's advertisement under a trade name.

SECTION 9. Subsection (a), Section 10, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

(a) The Board shall keep a record of its proceedings and register of all applications for licensure [registration], which register shall show (a) the name, age and residence of each applicant; (b) the date of the application; (c) the place of business of such applicant; (d) his educational and other qualifications; (e) whether or not an examination was required; (f) whether the applicant was rejected; (g) whether a license [certificate of registration] was granted; (h) the

date of the action of the Board; and (i) such other information as may be deemed necessary by the Board.

The records of the Board shall be available to the public at all times and shall be prima facie evidence of the proceedings of the Board set forth therein, and a transcript thereof, duly certified by the Secretary of the Board under seal, shall be admissible in evidence with the same force and effect as if the original was produced.

SECTION 10. Section 11, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 11. ROSTER OF LICENSED [REGISTERED] ENGINEERS. A roster showing the names and places of business of all licensed [registered] professional engineers shall be prepared and published by the Board each biennium at a time determined by the Board. Copies of this roster shall be furnished without charge to any engineer licensed [registered] by the Board on the written request of the engineer, placed on file with the Secretary of State, and furnished to any person upon written request who tenders a reproduction fee set by the Board.

SECTION 11. Section 12, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 12. GENERAL REQUIREMENTS FOR LICENSURE [REGISTRATION]. (a) The following shall be considered as minimum evidence satisfactory to the Board that the applicant is qualified for licensure [registration] as a professional engineer:

(1) graduation from an approved curriculum in engineering that is approved by the Board as of satisfactory standing, passage of the examination requirements prescribed by the Board, and a specific record of an additional four (4) years or more of active practice in engineering work, of a character satisfactory to the Board, indicating that the applicant is competent to be placed in responsible charge of such work; or

(2) graduation from an engineering or related science curriculum at a recognized institution of higher education, other than a curriculum approved by the Board under Subdivision (1) of this subsection, passage of the examination requirements prescribed by the Board, and a

specific record of at least eight (8) years of active practice in engineering work of a character satisfactory to the Board and indicating that the applicant is competent to be placed in responsible charge of such work.

(b)  Provided, that no person shall be eligible for licensure [registration] as a professional engineer who is not of good character and reputation; and provided further, that any engineer licensed [registered] under this Act shall be eligible to hold any appointive engineering position with the State of Texas.

(c)  In considering the qualifications of applicants, responsible charge of engineering teaching may be construed as responsible charge of engineering work.  The mere execution, as a contractor, of work designed by a professional engineer, or the supervision of the construction of such work as foreman or superintendent shall not be deemed to be active practice in engineering work.

(d)  Any person having the necessary qualifications prescribed in this Act to entitle him to licensure [registration] shall be eligible for such licensure [registration] though he may not be practicing at the time of making his application.

(e)  The Board may adopt rules providing for the waiver of all or part of the examination requirement under this Act to permit the issuance or reissuance of a license to an applicant. Before the Board may waive the requirement, the Board must find that the applicant possesses sufficient qualifications to justify the waiver of all or part of the examination requirement and that issuance or reissuance of the license to the applicant does not pose a threat to the public health, safety, or welfare.

SECTION 12.  Section 13, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), as amended by Chapters 947 and 1090, Acts of the 71st Legislature, Regular Session, 1989, is amended by amending Subsections (a), (b), and (d) and adding Subsection (e) to read as follows:

(a)  Applications for licensure [registration] shall be on forms prescribed and furnished by the Board, be sworn, and contain:

(1)  statements showing personal information about the applicant, as required by Board rule, and describing the applicant's education;

(2)  a detailed summary of the applicant's actual engineering work;

(3)  a statement describing any earlier professional engineering registrations or licenses by or denials, revocations, or suspensions of professional engineering registrations or licenses of the applicant;

(4)  a statement describing any criminal offenses of which the applicant has been convicted; and

(5)  not less than five (5) references from individuals with personal knowledge of the applicant's character, reputation, and general suitability for licensure [registration], of whom three (3) or more shall be licensed [registered] engineers having personal knowledge of the applicant's engineering experience.

(b)  The Board shall establish reasonable and necessary fees for the administration of this Act in amounts not to exceed:

1.  License [Registration] fee$50

2.  Annual renewal fee 75

3.  Reciprocal license [registration] fee 50

4.  Duplicate license [certificate of registration] 5

5.  Engineer-in-training certificate 15

6.  Roster of engineers  10

7.  Examination fee120 [100]

(d)  The Board by rule may adopt reduced licensure [registration] and annual renewal fees for licensed [registered] engineers who are at least 65 years of age.

(e)  The Board by rule may adopt reduced licensure and annual renewal fees for licensed engineers who are disabled and who are not currently engaged in the active practice of engineering.  For purposes of this subsection, an individual is "disabled" if the individual has a mental or physical impairment that substantially limits the ability of the individual to earn a

living as a licensed engineer, other than an impairment caused by a current condition of addiction to the use of alcohol or an illegal drug or controlled substance.  A licensed engineer entitled to reduced fees under this subsection because the engineer is not engaged in the active practice of engineering shall notify the Board of the resumption of active practice not later than the 15th day after the date the engineer resumes active practice.

SECTION 13.  Subsections (a) and (c), Section 13B, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), are amended to read as follows:

(a)  Each of the following fees imposed by or under another section of this Act is increased by $200:

(1)  license [registration] fee;

(2)  annual renewal fee; and

(3)  reciprocal license [registration] fee.

(c)  Subsection (a) does not apply to a licensed [registered] professional engineer who:

(1)  meets the qualifications for an exemption from licensure [registration] under Section 20(e) [20(g)] or (f) [(h)] of this Act but who does not claim that exemption; or

(2)  is disabled for purposes of Section 13(e) of this Act.

SECTION 14.  Subsection (a), Section 14, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

(a)  On payment of the examination fee, oral or written examinations shall be administered to qualified applicants at such time and place as the Board shall determine.  The scope of the examinations and the methods of procedure shall be prescribed by the Board with special reference to the applicant's ability to design and supervise engineering works, which shall insure the safety of life, health, and property.  Examinations shall be given for the purpose of determining the qualifications of applicants for licensure [registration] in professional engineering.  The Board may permit reexamination of an applicant on payment of an appropriate reexamination fee in an amount set by the Board.

SECTION 15.  Section 15, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 15.  LICENSES [CERTIFICATES], SEALS.  (a)  The Board shall issue a license [certificate of registration] upon payment of the license [registration] fee as provided for in this Act, to any applicant, who, in the opinion of the Board, has satisfactorily met all the requirements of this Act.  The license [In case of a registered engineer, the certificate] shall authorize the practice of professional engineering.  A license [Certificates of registration] shall show the full name of the license holder [registrant], shall have a serial number, and shall be signed by the Chairman and the Secretary of the Board under seal of the Board.  The issuance of a license [certificate of registration] by this Board shall be evidence that the person named therein is entitled to all rights and privileges of a licensed [registered] professional engineer, while the said license [certificate] remains unrevoked or unexpired.

(b)  Each license holder [registrant] hereunder shall upon licensure [registration] obtain a seal of the design authorized by the Board, bearing the license holder's [registrant's] name and the legend "Licensed Professional Engineer" or "Registered Professional Engineer".  Plans, specifications, plats, and reports issued by a license holder [registrant] must include the license holder's [registrant's] seal affixed to the document.  It shall be unlawful for any one to affix a seal on any document if the license [certificate] of the license holder [registrant] named thereon has expired or has been suspended or revoked, unless said license [certificate] shall have been renewed or reissued.

(c)  This Act applies to all engineering practiced in this state that is not exempted under this Act.  A public official of this state or of a political subdivision of this state who is charged with the enforcement of laws, ordinances, codes, or regulations that affect the practice of engineering may only accept plans, specifications, and other related documents prepared by a licensed engineer [registered engineers], as evidenced by the seal of the engineer.  A public official shall report violations of this Act to the proper authorities.

SECTION 16.  Section 16, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 16.  EXPIRATIONS AND RENEWALS.  (a)  It shall be the duty of the Board to notify every person licensed [registered] under this Act of the date of the expiration of his license [certificate] and the amount of the fee that shall be required for its renewal for one year; such notice shall be mailed at least one month in advance of the date of the expiration of said license [certificate] to the last address provided by the license holder [registrant] to the Board.

(b)  A person may renew an unexpired license [certificate of registration] by paying to the Board before the expiration date of the license [certificate of registration] the required renewal fee.

(c)  If a person's license [certificate of registration] has been expired for not longer than 90 days, the person may renew the license [certificate of registration] by paying to the Board the required renewal fee and a penalty fee as set by the Board.

(d)  If a person's license [certificate of registration] has been expired for longer than 90 days but less than two years, the person may renew the license [certificate of registration] by paying to the Board all unpaid renewal fees and a penalty fee as set by the Board.

(e)  If a person's license [certificate of registration] has been expired for two years or longer, the person may not renew the license [certificate of registration].  The person may obtain a new license [certificate of registration] by complying with the requirements and procedures for obtaining an original license [certificate of registration] that are in effect at the time the person applies.

SECTION 17.  Section 16.1, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 16.1.  EXPIRATION DATES OF LICENSES [CERTIFICATES OF REGISTRATION]. The board by rule may adopt a system under which licenses [certificates of registration] expire on various dates during the year, and the dates for reinstatement shall be adjusted accordingly.

SECTION 18. Section 17, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 17. FIRMS, PARTNERSHIPS, CORPORATIONS AND JOINT STOCK ASSOCIATIONS. A firm, or a co-partnership, or a corporation, or a joint stock association may engage in the practice of professional engineering in this State, provided such practice is carried on by only professional engineers licensed [registered] in this State.

SECTION 19. Section 18, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 18. (a) No firm, partnership, association, corporation or other business entity shall hold itself out to the public or any member thereof as being engaged in the practice of engineering under any assumed, trade, business, partnership or corporate name or employ, use, cause to be used or make use of in any manner whatsoever any such words or terms as "engineer," "engineering," "engineering services," "engineering company," "engineering, inc.," "professional engineers," "licensed engineer," "registered engineer," "licensed professional engineer," "registered professional engineer," "engineered," or any combinations, abbreviations or variations thereof, or in combination with any other words, letters, initials, signs or symbols on, in or as a part of, directly or indirectly, any sign, directory, listing, contract, document, pamphlet, stationery, letterhead, advertisement, signature, trade name, assumed name, corporate or other business name unless such firm, partnership, association, corporation or other business entity is actually and actively engaged in the practice of engineering or offering engineering services to the public, and any and all services, work, acts or things performed or done by it which constitute any part of the practice of engineering are either personally performed or done by a licensed [registered] engineer or under the direct [responsible] supervision of a licensed [registered] engineer who is a regular full-time employee of the firm, partnership, association, corporation, or other business entity.

(b) This section does not prohibit a licensed engineer from performing engineering services on a part-time basis.

SECTION 20.  Subsection (a), Section 19, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

(a)  It is unlawful for this State or for any of its political subdivisions, including any county, city, or town, to engage in the construction of any public work involving professional engineering, where public health, public welfare or public safety is involved, unless the engineering plans and specifications and estimates have been prepared by, and the engineering construction is to be executed under the direct supervision of a licensed [registered] professional engineer.

SECTION 21.  Section 20, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 20.  EXEMPTIONS.  The following persons shall be exempt from the licensure [registration] provisions of this Act, provided that such persons are not directly or indirectly represented or held out to the public to be legally qualified to engage in the practice of engineering:

(a)  [A person not a resident of and having no established place of business in this state if that person:

[(1)  has filed an application for registration as a professional engineer with the Board and the application is pending Board action;

[(2)  is legally qualified to practice engineering in another jurisdiction whose requirements for practice are at least as strict as those required by this state; and

[(3)  affixes the person's seal from the jurisdiction in which the person is legally qualified to practice on all work completed while the application for registration to practice in this state is pending.

[(b)  A person who has recently become a resident of this state if that person:

[(1)  has filed an application for registration as a professional engineer with the Board and the application is pending Board action;

[(2)  is legally qualified to practice engineering in another jurisdiction whose requirements for practice are at least as strict as those required by this state; and

[(3)  affixes the person's seal from the jurisdiction in which the person is legally qualified to practice on all work completed while the application for registration to practice in this state is pending.

[(c)]  An employee or a subordinate of a person holding a license [certificate of registration] under this Act[, or any employee of a person exempted from registration by classes (a) and (b) of this Section]; provided, his practice does not include responsible charge of design or supervision.

(b) [(d)]  Officers and employees of the Government of the United States while engaged within this state in the practice of the profession of engineering for said Government.

(c) [(e)]  A person doing the actual work of installing, operating, repairing, or servicing locomotive or stationary engines, steam boilers, Diesel engines, internal combustion engines, refrigeration compressors and systems, hoisting engines, electrical engines, air conditioning equipment and systems, or mechanical and electrical, electronic or communications equipment and apparatus; this Act may not be construed to prevent any citizen from identifying himself in the name and trade of any engineers' labor organization with which he may be affiliated, however, this exemption may not be construed to permit any person other than a licensed [registered] professional engineer to affix his signature to engineering plans, or specifications and may not be construed to permit a person to use the term "engineer" or "engineering" in any manner prohibited by this Act.

(d) [(f)]  A person, firm, partnership, joint stock association or private corporation, erecting, constructing, enlarging, altering or repairing, or drawing plans and specifications for: (1) any private dwelling, or apartments not exceeding eight units per building for one story buildings, or apartments not exceeding four units per building and having a maximum height of two stories, or garages or other structures pertinent to such buildings; or (2) private buildings which are to be used exclusively for farm, ranch or agricultural purposes, or used exclusively for

storage of raw agricultural commodities; or (3) other buildings, except public buildings included under Section 19 of this Act, having no more than one story and containing no clear span between supporting structures greater than 24 feet on the narrow side and having a total floor area not in excess of five thousand square feet; provided that on unsupported spans greater than 24 feet on such buildings only the trusses, beams, or other roof supporting members need to be engineered or pre-engineered; provided that no representation is made or implied that engineering services have been or will be offered to the public.

(e) [(g)] Any regular full time employee of a private corporation or other private business entity who is engaged solely and exclusively in performing services for such corporation and/or its affiliates; provided, such employee's services are on, or in connection with, property owned or leased by such private corporation and/or its affiliates or other private business entity, or in which such private corporation and/or its affiliates or other business entity has an interest, estate or possessory right, or whose services affect exclusively the property, products, or interests of such private corporation and/or its affiliates or other private business entity; and, provided further, that such employee does not have the final authority for the approval of, and the ultimate responsibility for, engineering designs, plans or specifications pertaining to such property or products which are to be incorporated into fixed works, systems, or facilities on the property of others or which are to be made available to the general public. This exemption includes the use of job titles and personnel classifications by such persons not in connection with any offer of engineering services to the public, providing that no name, title, or words are used which tend to convey the impression that an unlicensed person is offering engineering services to the public.

(f) [(h)] Any regular full time employee of a privately owned public utility or cooperative utility and/or affiliates who is engaged solely and exclusively in performing services for such utility and/or its affiliates; provided, that such employee does not have the final authority for the approval of, and the ultimate responsibility for engineering designs, plans or specifications to be incorporated into fixed works, systems, or facilities on the property of others

or which are to be made available to the general public.  This exemption includes the use of job titles and personnel classifications by such persons not in connection with any offer of engineering services to the public, providing that no name, title, or words are used which tend to convey the impression that an unlicensed person is offering engineering services to the public.

(g) [(i)]  Qualified scientists engaged in scientific research and investigation of the physical or natural sciences, including the usual work and activities of meteorologists, seismologists, geologists, chemists, geochemists, physicists and geophysicists.

(h) [(j)]  Nothing in this Act shall be construed or applied so as to prohibit or in any way restrict any person from giving testimony or preparing exhibits or documents for the sole purpose of being placed in evidence before any administrative or judicial tribunal of competent jurisdiction.

(i) [(k)]  Nothing in this Act shall apply to any agricultural work being performed in carrying out soil and water conservation practices.

(j) [(l)]  This Act shall not be construed as applying to operating telephone companies and/or affiliates or their employees in respect to any plans, designs, specifications, or services which relate strictly to the science and art of telephony.  This exemption includes the use of job titles and personnel classifications by such persons not in connection with any offer of engineering services to the public, providing that no name, title, or words are used which tend to convey the impression that an unlicensed person is offering engineering services to the public.

(k)  This Act or a rule adopted under this Act does not prevent, limit, or restrict a person licensed as an architect, landscape architect, or interior designer under the laws of this state from performing an act, service, or work that is within the definition of the person's practice as an architect under Chapter 478, Acts of the 45th Legislature, Regular Session, 1937 (Article 249a, Vernon's Texas Civil Statutes), as a landscape architect under Chapter 457, Acts of the 61st Legislature, Regular Session, 1969 (Article 249c, Vernon's Texas Civil Statutes), or as an interior designer under Article 249e, Revised Statutes.

(l)  This Act does not apply to a regular full-time employee of a private corporation or other private business entity who is engaged in erecting, constructing, enlarging, altering, repairing, rehabilitating, or maintaining an improvement to real property in accordance with plans and specifications that bear the seal of a licensed engineer.  This exemption includes the use of job titles and personnel classifications by the employee that are not in connection with any offer of engineering services to the public.

SECTION 22.  The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes) is amended by adding Section 20A to read as follows:

Sec. 20A.  TEMPORARY OR PROVISIONAL LICENSE.  The Board may adopt rules providing standards and procedures for the issuance of a temporary or provisional license under this Act.

SECTION 23.  Section 21, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 21.  LICENSURE [REGISTRATION] BY NONRESIDENTS.  A person who holds a valid certificate of registration or license issued to him by proper authority of any state or territory or possession of the United States, the District of Columbia, or any foreign country may apply for licensure [registration] in this state.

SECTION 24.  Section 22, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 22.  DENIAL, REVOCATION, SUSPENSION, PROBATION, REPRIMAND, RE-ISSUANCE AND REFUSAL OF LICENSE; STATUS REVIEW [CERTIFICATE].
(a)  The Board shall revoke, suspend, or refuse to renew a license [registration], shall reprimand a license holder [registrant], may deny an application for licensure [registration], or may probate any suspension of any license holder [registrant] who is determined by the Board to be censurable for:

(1)  The practice of any fraud or deceit in obtaining a license [certificate of registration];

(2)  Any gross negligence, incompetency, or misconduct in the practice of professional engineering as a licensed [registered] professional engineer;

(3)  Any documented instance of retaliation by an applicant against an individual who has served as a reference for that applicant;

(4)  A violation of this Act or a Board rule; or

(5)  A failure to timely provide plans and specifications to the Texas Department of Licensing and Regulation as required by Article 9102, Revised Statutes.

(b)  Any person who may feel himself aggrieved by reason of the revocation of his license [certificate of registration] by the Board, as hereinabove authorized, shall have the right to file suit in the district court of the county of his residence, or of the county in which the alleged offense relied upon as grounds for revocation took place, to annul or vacate the order of the Board revoking the license [certificate of registration].

(c)  If the Board proposes to suspend or revoke a person's license [certificate of registration], the person is entitled to a hearing before the Board.  Proceedings for the suspension or revocation of a license [certificate of registration] are governed by Chapter 2001, Government Code [the Administrative Procedure and Texas Register Act, as amended (Article 6252-13a, Vernon's Texas Civil Statutes)].

(d)  The Board, for reasons it may deem sufficient, may re-issue a license [certificate of registration] to any person whose license [certificate] has been revoked, provided six (6) or more members of the Board vote in favor of such re-issuance.  A new license [certificate of registration], to replace any license [certificate] revoked, lost, destroyed, or mutilated, may be issued, subject to the rules of the Board.

(e)  The Board may adopt rules permitting the Board to review the status of a license holder who the Board believes may have been issued a license through fraud or error or who may constitute a threat to the public health, safety, or welfare.  The Board may suspend or revoke a license held by a person whose status is reviewed under this subsection.

SECTION 25.  Section 22A, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 22A.  INFORMATION ABOUT COMPLAINTS.  (a)  The Board shall keep an information file about each complaint filed with the Board relating to a license holder [registrant].

(b)  If a written complaint is filed with the Board relating to a license holder [registrant], the Board, at least as frequently as quarterly, shall notify the parties to the complaint of the status of the complaint until final disposition unless the notification would jeopardize an undercover investigation.

(c)  The Board shall adopt rules that permit the Board to receive and investigate confidential complaints against license holders or any other person who may have violated this Act.  The Board shall maintain the confidentiality of the complaint during the investigation of the complaint.

SECTION 26.  The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes) is amended by adding Section 22C to read as follows:

Sec. 22C.  ADMINISTRATIVE PENALTY.  (a)  The Board may impose an administrative penalty against a person licensed under this Act or any other person or entity that violates this Act or a rule or order adopted under this Act.  The Board may include in the amount of the administrative penalty the actual costs of investigating and prosecuting the violation.

(b)  The penalty for a violation may be in an amount not to exceed $3,000.  Each day a violation continues or occurs is a separate violation for purposes of imposing a penalty.

(c)  The amount of the penalty shall be based on:

(1)  the seriousness of the violation, including the nature, circumstances, extent, and gravity of any prohibited acts, and the hazard or potential hazard created to the health, safety, or economic welfare of the public;

(2)  the economic harm to property or the environment caused by the violation;

(3)  the history of previous violations;

(4)  the amount necessary to deter future violations;

(5)  efforts or resistance to efforts to correct the violation; and

(6)  any other matter that justice may require.

(d)  The Board shall adopt rules of procedure for the assessment of an administrative penalty by the Board.  Rules adopted under this section must conform to the requirements of Chapter 2001, Government Code.

(e)  Within 30 days after the date the Board's order becomes final as provided by Section 2001.144, Government Code, the person shall:

(1)  pay the amount of the penalty;

(2)  pay the amount of the penalty and file a petition for judicial review contesting the occurrence of the violation, the amount of the penalty, or both the occurrence of the violation and the amount of the penalty; or

(3)  without paying the amount of the penalty, file a petition for judicial review contesting the occurrence of the violation, the amount of the penalty, or both the occurrence of the violation and the amount of the penalty.

(f)  Within the 30-day period, a person who acts under Subsection (e)(3) of this section may:

(1)  stay enforcement of the penalty by:

(A)  paying the amount of the penalty to the court for placement in an escrow account; or

(B)  giving to the court a supersedeas bond that is approved by the court for the amount of the penalty and that is effective until all judicial review of the Board's order is final; or

(2)  request the court to stay enforcement of the penalty by:

(A)  filing with the court a sworn affidavit of the person stating that the person is financially unable to pay the amount of the penalty and is financially unable to give the supersedeas bond; and

(B)  giving a copy of the affidavit to the executive director by certified mail.

(g)  On receipt by the director of a copy of an affidavit under Subsection (f)(2) of this section, the director may file with the court, within five days after the date the copy is received, a contest to the affidavit.  The court shall hold a hearing on the facts alleged in the affidavit as soon as practicable and shall stay the enforcement of the penalty on finding that the alleged facts are true.  The person who files an affidavit has the burden of proving that the person is financially unable to pay the amount of the penalty and to give a supersedeas bond.

(h)  If the person does not pay the amount of the penalty and the enforcement of the penalty is not stayed, the director may refer the matter to the attorney general for collection of the amount of the penalty.

(i)  Judicial review of the order of the Board:

(1)  is instituted by filing a petition as provided by Subchapter G, Chapter 2001, Government Code; and

(2)  is under the substantial evidence rule.

(j)  If the court sustains the occurrence of the violation, the court may uphold or reduce the amount of the penalty and order the person to pay the full or reduced amount of the penalty.  If the court does not sustain the occurrence of the violation, the court shall order that no penalty is owed.

(k)  When the judgment of the court becomes final, the court shall proceed under this subsection.  If the person paid the amount of the penalty and if that amount is reduced or is not upheld by the court, the court shall order that the appropriate amount plus accrued interest be remitted to the person.  The rate of the interest is the rate charged on loans to depository institutions by the New York Federal Reserve Bank, and the interest shall be paid for the period beginning on the date the penalty was paid and ending on the date the penalty is remitted.  If the person gave a supersedeas bond and if the amount of the penalty is not upheld by the court, the court shall order the release of the bond.  If the person gave a supersedeas bond and if the amount of the penalty is reduced, the court shall order the release of the bond after the person pays the amount.

(l)  A penalty collected under this section shall be remitted to the comptroller for deposit in the general revenue fund, except that the portion of the penalty that represents the costs of the Board in investigating and prosecuting the violation shall be remitted to the Board as reimbursement for performance of the Board's regulatory functions.

(m)  All proceedings under this section are subject to Chapter 2001, Government Code.

SECTION 27.  Subsection (a), Section 23, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

(a)  Any person who shall practice, or offer to practice, the profession of engineering in this State without being licensed [registered] or exempted from licensure [registration] in accordance with the provisions of this Act, or any person presenting or attempting to use as his own the license [certificate of registration] or the seal of another, or any person who shall give any false or forged evidence of any kind to the Board or to any member thereof in obtaining a license [certificate of registration], or any person who shall violate any of the provisions of this Act, commits an offense.  An offense under this subsection is a Class A misdemeanor.

SECTION 28.  Section 26, The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes), is amended to read as follows:

Sec. 26.  CONFIDENTIALITY OF CERTAIN INFORMATION.  A statement made by a person providing a reference for an applicant and other pertinent information compiled by or submitted to the Board relating to an applicant for licensure [registration] under this Act is privileged and confidential and may be used only by the Board or employees or agents of the Board who are directly involved in the application or licensure [registration] process.  The information is not subject to discovery, subpoena, or other disclosure.

SECTION 29.  The change in law made by this Act applies only to a violation of The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes) or a rule adopted under that Act that is reported on or after the effective date of this Act.  A violation that is reported before that date is governed by the law in effect on the date the violation was reported, and the former law is continued in effect for that purpose.

SECTION 30. The change in law made by this Act relating to the change in the type of credential issued to practice as an engineer does not affect the validity of a certificate of registration issued before the effective date of this Act.

SECTION 31. The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.

_____     _____
   President of the Senate               Speaker of the House

I hereby certify that S.B. No. 623 passed the Senate on April 7, 1997, by the following vote: Yeas 30, Nays 0.

_____
       Secretary of the Senate

I hereby certify that S.B. No. 623 passed the House on May 13, 1997, by a non-record vote.

_____
       Chief Clerk of the House

Approved:


_____

Date

_____
Governor

# TAB
# 3

# TEXAS GOVERNMENT CODE
## CHAPTER 2001. ADMINISTRATIVE PROCEDURE
SUBCHAPTER A. GENERAL PROVISIONS

*§ 2001.003 Definitions.* In this chapter:

(1) "Contested case" means a proceeding, including a ratemaking or licensing proceeding, in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing.

(2) "License" includes the whole or a part of a state agency permit, certificate, approval, registration, or similar form of permission required by law.

(3) "Licensing" includes a state agency process relating to the granting, denial, renewal, revocation, suspension, annulment, withdrawal, or amendment of a license.

(4) "Party" means a person or state agency named or admitted as a party.

(5) "Person" means an individual, partnership, corporation, association, governmental subdivision, or public or private organization that is not a state agency.

(6) "Rule":
> (A) means a state agency statement of general applicability that:
>> (i) implements, interprets, or prescribes law or policy; or
>> (ii) describes the procedure or practice requirements of a state agency;
> (B) includes the amendment or repeal of a prior rule; and
> (C) does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

(7) "State agency" means a state officer, board, commission, or department with statewide jurisdiction that makes rules or determines contested cases. The term includes the State Office of Administrative Hearings for the purpose of determining contested cases. The term does not include:
> (A) a state agency wholly financed by federal money;
> (B) the legislature;
> (C) the courts;
> (D) the Texas Department of Insurance, as regards proceedings and activities under Title 5, Labor Code, of the department, the commissioner of insurance, or the commissioner of workers' compensation; or
> (E) an institution of higher education.

*Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by: Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 6.007, eff. September 1, 2005.*

# TEXAS GOVERNMENT CODE
## CHAPTER 2001. ADMINISTRATIVE PROCEDURE
SUBCHAPTER G. CONTESTED CASES: JUDICIAL REVIEW

*§ 2001.174. Review under Substantial Evidence Rule or Undefined Scope of Review.* If the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:

(1) may affirm the agency decision in whole or in part; and

(2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(A)  in violation of a constitutional or statutory provision;

(B)  in excess of the agency's statutory authority;

(C)  made through unlawful procedure;

(D)  affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole;  or

(F)  arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.*

*§ 2001.1775.  Modification of Agency Findings or Decision.*  Except as provided by Section 2001.175(c), an agency may not modify its findings or decision in a contested case after proceedings for judicial review of the case have been instituted under Section 2001.176 and during the time that the case is under judicial review.

*Added by Acts 1995, 74th Leg., ch. 76, Sec. 5.21(a), eff. Sept. 1, 1995.*

# TEXAS GOVERNMENT CODE
## CHAPTER 2254. PROFESSIONAL AND CONSULTING SERVICES
### SUBCHAPTER A. PROFESSIONAL SERVICES

*§ 2254.002.  Definitions.*  In this subchapter:

(1)  "Governmental entity" means:

(A)  a state agency or department;

(B)  a district, authority, county, municipality, or other political subdivision of the state;

(C)  a local government corporation or another entity created by or acting on behalf of a political subdivision in the planning and design of a construction project;  or

(D)  a publicly owned utility.

(2)  "Professional services" means services:

(A)  within the scope of the practice, as defined by state law, of:

(i)  accounting;

(ii)  architecture;

(iii)  landscape architecture;

(iv)  land surveying;

(v)  medicine;

(vi)  optometry;

(vii)  professional engineering;

(viii)  real estate appraising;  or

(ix)  professional nursing;  or

(B)  provided in connection with the professional employment or practice of a person who is licensed or registered as:

(i)  a certified public accountant;

(ii)  an architect;

(iii)  a landscape architect;

(iv)  a land surveyor;

(v)  a physician, including a surgeon;

(vi)  an optometrist;

(vii)  a professional engineer;

(viii)  a state certified or state licensed real estate appraiser;  or

(ix)  a registered nurse.

*Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1997, 75th Leg., ch. 244, Sec. 1, eff. Sept. 1, 1997;  Acts 1999, 76th Leg., ch. 1542, Sec. 1, eff. Sept. 1, 1999;  Acts 2001, 77th Leg., ch. 1409, Sec. 8, eff. Sept. 1, 2001.*

### § 2254.003.  *Selection of Provider;  Fees.*

(a)  A governmental entity may not select a provider of professional services or a group or association of providers or award a contract for the services on the basis of competitive bids submitted for the contract or for the services, but shall make the selection and award:

(1)  on the basis of demonstrated competence and qualifications to perform the services;  and

(2)  for a fair and reasonable price.

(b)  The professional fees under the contract  may not exceed any maximum provided by law.

*Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.  Amended by: Acts 2007, 80th Leg., R.S., Ch. 1213 (H.B. 1886), Sec. 14, eff. September 1, 2007.*

**TAB
4**

## § 1001.003.  Practice of Engineering.

(a)  In this section:

(1)  "Design coordination" includes the review and coordination of technical submissions prepared by others, including the work of other professionals working with or under the direction of an engineer with professional regard for the ability of each professional involved in a multidisciplinary effort.

(2)  "Engineering survey" includes any survey activity required to support the sound conception, planning, design, construction, maintenance, or operation of an engineered project. The term does not include the surveying of real property or other activity regulated under Chapter 1071.

(b)  In this chapter, "practice of engineering" means the performance of or an offer or attempt to perform any public or private service or creative work, the adequate performance of which requires engineering education, training, and experience in applying special knowledge or judgment of the mathematical, physical, or engineering sciences to that service or creative work.

(c)  The practice of engineering includes:

(1)  consultation, investigation, evaluation, analysis, planning, engineering for program management, providing an expert engineering opinion or testimony, engineering for testing or evaluating materials for construction or other engineering use, and mapping;

(2)  design, conceptual design, or conceptual design coordination of engineering works or systems;

(3)  development or optimization of plans and specifications for engineering works or systems;

(4)  planning the use or alteration of land or water or the design or analysis of works or systems for the use or alteration of land or water;

(5)  responsible charge of engineering teaching or the teaching of engineering;

(6)  performing an engineering survey or study;

(7)  engineering for construction, alteration, or repair of real property;

(8)  engineering for preparation of an operating or maintenance manual;

(9)  engineering for review of the construction or installation of engineered works to monitor compliance with drawings or specifications;

(10)  a service, design, analysis, or other work performed for a public or private entity in connection with a utility, structure, building, machine, equipment, process, system, work, project, or industrial or consumer product or equipment of a mechanical, electrical, electronic, chemical, hydraulic, pneumatic, geotechnical, or thermal nature;

(11)  providing an engineering opinion or analysis related to a certificate of merit under Chapter 150, Civil Practice and Remedies Code; or

(12)  any other professional service necessary for the planning, progress, or completion of an engineering service.

*Added by Acts 2001, 77th Leg., ch. 1421, Sec. 1, eff. June 1, 2003.  Amended by Acts 2003, 78th Leg., ch. 1276, Sec. 14A.001(a), eff. Sept. 1, 2003.  Amended by: Acts 2005, 79th Leg., Ch. 259 (H.B. 1817), Sec. 1, eff. September 1, 2005.*

*§ 1001.202. Rules.*  The board may adopt and enforce any rule or bylaw necessary to perform its duties, govern its proceedings, and regulate the practice of engineering.
*Added by Acts 2001, 77th Leg., ch. 1421, Sec. 1, eff. June 1, 2003.*

*§ 1001.203.  Rules Restricting Advertising or Competitive Bidding.*

(a)  The board by rule shall prescribe standards for compliance with Subchapter A, Chapter 2254, Government Code.

(b)  Except as provided by Subsection (a), the board may not adopt rules restricting advertising or competitive bidding by a license holder except to prohibit false, misleading, or deceptive practices.

(c)  In its rules to prohibit false, misleading, or deceptive practices, the board may not include a rule that:

(1)  restricts the use of any medium for advertising;

(2)  restricts the use of a license holder's personal appearance or voice in an advertisement;

(3)  relates to the size or duration of an advertisement by the license holder;  or

(4)  restricts the license holder's advertisement under a trade name.

*Added by Acts 2001, 77th Leg., ch. 1421, Sec. 1, eff. June 1, 2003.  Amended by Acts 2003, 78th Leg., ch. 1168, Sec. 13, eff. Sept. 1, 2003.*

*§ 1001.301.  License Required.*

(a)  A person may not engage in the practice of engineering unless the person holds a license issued under this chapter.

(b)  Except as provided by Subsection (f), a person may not, unless the person holds a license issued under this chapter, directly or indirectly use or cause to be used as a professional, business, or commercial identification, title, name, representation, claim, asset, or means of advantage or benefit any of, or a variation or abbreviation of, the following terms:

(1)  "engineer";

(2)  "professional engineer";

(3)  "licensed engineer";

(4)  "registered engineer";

(5)  "registered professional engineer";

(6)  "licensed professional engineer";  or

(7)  "engineered."

(c)  Except as provided by Subsection (f), a person may not directly or indirectly use or cause to be used an abbreviation, word, symbol, slogan, or sign that tends or is likely to create an impression with the public that the person is qualified or authorized to engage in the practice of engineering unless the person holds a license and is practicing under this chapter.

(d)  A person may not receive any fee or compensation or the promise of any fee or compensation for engaging in the practice of engineering unless the person holds a license issued under this chapter.

(e)  A person, sole proprietorship, firm, partnership, association, or corporation that engages in or

offers or attempts to engage in conduct described by this section is conclusively presumed to be engaged in the practice of engineering.

(f)  Notwithstanding the other provisions of this chapter, a regular employee of a business entity who is engaged in engineering activities but is exempt from the licensing requirements of this chapter under Sections 1001.057 or 1001.058 is not prohibited from using the term "engineer" on a business card, cover letter, or other form of correspondence that is made available to the public if the person does not:

(1)  offer to the public to perform engineering services;  or

(2)  use the title in any context outside the scope of the exemption in a manner that represents an ability or willingness to perform engineering services or make an engineering judgment requiring a licensed professional engineer.

(g)  Subsection (f) does not authorize a person to use a term listed in Subsections (b)(2)-(6) or a variation or abbreviation of one of those terms.

*Added by Acts 2001, 77th Leg., ch. 1421, Sec. 1, eff. June 1, 2003.  Amended by Acts 2003, 78th Leg., ch. 1168, Sec. 22, eff. Sept. 1, 2003.*

## TEXAS OCCUPATIONS CODE
### CHAPTER 1001. ENGINEERS
### SUBCHAPTER I. PRACTICE OF ENGINEERING

*§ 1001.407.  Construction of Certain Public Works.*  The state or a political subdivision of the state may not construct a public work involving engineering in which the public health, welfare, or safety is involved, unless:

(1)  the engineering plans, specifications, and estimates have been prepared by an engineer;  and

(2)  the engineering construction is to be performed under the direct supervision of an engineer.

*Added by Acts 2001, 77th Leg., ch. 1421, Sec. 1, eff. June 1, 2003.*

# TAB
# 5



# Texas Board of Professional Engineers
## Policy Advisory Opinion Regarding Construction Materials Engineering
August 20, 2009

**Executive Summary:** The assessment of a construction material for quality, appropriateness and acceptability is considered by the Board to be an engineering activity. These Construction Materials Engineering (CME) activities must be performed by licensed professional engineers. Construction materials testing (CMT), within the context of CME includes collecting samples, performing well-defined test procedures, and reporting of data. In certain situations, performing tests and construction materials sampling using well-defined engineering specifications may not be considered engineering activities.

**Discussion:** On construction projects, engineers are called upon to assess the quality, appropriateness and acceptability of the materials that are used. These assessments are known collectively as CME. The CME includes the determination of the scope and procedures of testing for the project, the supervision of testing, and the analysis of test results for construction material acceptance purposes or for use in engineering recommendations. Although we most commonly associate CME with the analysis of concrete and soil, CME is conducted on any material used in construction including but not limited to timber, asphaltic concrete, steel, selected fill materials, recycled materials, aggregates, epoxies, and polymers.

Because it is engineering, CME must be personally performed by a licensed engineer or be directly supervised by a licensed engineer, and can only be offered to the public in full conformance with the Texas Engineering Practice Act (Act). Any CME activities that are contracted by a political subdivision of the State of Texas or an agency of the state, or on the political subdivision or agency's behalf, must be acquired in conformance with the Professional Services Procurement Act, Article 2254.004 of the Texas Government Code.

The CMT, within the context of CME includes collecting samples, performing well-defined test procedures, and reporting of data. In certain situations, performing tests and sampling by using well-defined engineering specifications may not be considered engineering activities. However, if analysis of test data is done or a determination is made that a material is acceptable, these activities would be considered to be CME and require a licensed professional engineer. Because the engineer is responsible for accepting the public works project, acceptance or rejection of materials or work, the direct supervision by an engineer of CMT for those acceptance decisions is needed.

**Public Works:** When constructing public works, the state or political subdivision of the state must ensure that the engineering construction is performed under the direct supervision of a licensed engineer (Sec. 1001.407, Occupations Code). This supervision must include the direct supervision of materials testing and engineering necessary and appropriate for verification of compliance with construction plans and acceptance of the project by the public owner.

A licensed professional engineer must directly supervise any element of acceptance testing, from data collection to final determination. When engineers are hired for these services, they must be retained under the Professional Services Procurement Act (PSPA). The CMT services unrelated to acceptance testing might be acquired using other purchasing procedures provided the CMT services do not include any CME function. For public entities with staff engineers who make acceptance decisions, the engineers must be in a position to determine if the testing and inspection services are properly performed at a frequency that provides confidence that the materials and work meet (or reasonably conform in some cases) the contract requirements or standards of practice. This requires reviewing qualifications, monitoring inspection and testing services and review of test and inspection data.

The validity of an engineering judgment in the construction materials area is integrally tied to the validity of test data, which is in turn directly related to training of technical staff, performance of testing equipment, and other elements associated with an accredited engineering laboratory. Therefore, by the standard established by Sec. 1001.407, Occupations Code, CMT conducted for the purpose of verification and acceptance of a facility is considered a CME function.

The Board recognizes as a specific exception for CMT conducted under a federally approved quality assurance program (QA) specifically governing the Texas Department of Transportation, provided that alternate methods of ensuring appropriate engineering direct supervision are in place. In addition, CMT services used for a contractor's internal quality control purposes only and are not used by the owner for verification and/or acceptance purposes may not be considered engineering.

# TAB
# 6

# T.S.I. LABORATORIES, INC.



TRINITY SOILS INVESTIGATION
1010 SOUTH LAURENT
VICTORIA, TEXAS 77001

Telephone 361-578-6933
Fax 361-578-2001
Email:sjames_tsilab@sbcglobal.net

February 18, 2009

David Wendel
San Patricio County Courthouse
400 West Sinton St.
Sinton, TX 78387

Re:     Construction Materials Testing Proposal
        San Patricio County Fairgrounds New Horse Barn Facility
        Proposal No.: 02036

Mr. Wendel:

Trinity Soils Investigations (TSI Laboratories, Inc.) is pleased to submit our Construction Materials Testing (CMT) proposal for testing and inspection services for the above referenced project.

Trinity Soils Investigations has been in business for over 14 years. TSI technicians have acquired various ACI and state certifications and licenses for testing and analysis of soils, concrete, asphalt, and steel materials. TSI Laboratories, Inc. conducts all its testing of materials in accordance with state, TxDOT, U.S. Army Corps of Engineers, ASTM and National Standards and has accurate and calibrated state-of-the-art testing equipment.

The total estimated cost for our inspection and testing services for the above referenced project is $7,884.00 . This estimate is based on anticipated quantities and work schedules. If there are any changes, the cost will be adjusted accordingly. This proposal is valid for a period of six months from above date.

TSI's experienced and certified technicians will conduct all inspections of this project to verify strict compliance to project plans and specifications or as requested by project engineers or architects. If there are any questions, please call us at (361) 578-6933.

Respectfully Submitted,
T.S.I. Laboratories, Inc.

*Stephen James*

Stephen James

This proposal is accepted in accordance with the prices, terms (net 30) and conditions listed.

Firm _____

Signature of Authorized Representative:

_____ Date _____

_____ (print)

Please sign and return acceptance copy.



## Estimated Cost and Quantities

### Foundation Pad Earthwork

| | | |
|---|---|---|
| 1 Proctor (Subgrade) | x $ 125.00 each | $ 125.00 |
| 1 PI (Subgrade) | x $ 40.00 each | $ 40.00 |
| 1 Proctor (Site Fill) | x $ 125.00 each | = $ 125.00 |
| 1 PI (Site Fill) | x $ 40.00 each | = $ 40.00 |
| 2 Hours Proof Roll Subgrade | x $ 32.00/hour | $ 64.00 |
| 15 Subgrade Density Tests | x $ 20.00 each | = $ 300.00 |
| 40 Site Fill Density Tests | x $ 20.00 each | = $ 800.00 |
| 6 Trips to job site | x $ 20.00 each | = $ 120.00 |
| *Foundation Earthwork Total*.................................. | | *$1,614.00* |

### Drilled Piers(Based on a 200 Stall Horse Barn)

54 Piers
1 set of 4 Concrete Cylinders Per Day
Estimated (5) 10 hour days of drilling

| | | |
|---|---|---|
| 5 Sets of 4 Cylinders = 20 Cylinders | x $ 12.00 each | = $ 240.00 |
| (5) 10 Hour days of Drilled Pier Observation, Monitoring, and Recording = 50 Hours | x $ 32.00/hour | = $1,600.00 |
| 5 Trips to job site | x $ 20.00 each | = $ 100.00 |
| *Drilled Piers Total*.................................. | | *$1,940.00* |

### Foundation Slab(Based on a 200 Stall Horse Barn)

| | | |
|---|---|---|
| 4 Hours Rebar Inspection | x $ 32.00/hour | = $ 128.00 |
| 8 Sets of 4 Cylinders = 32 Cylinders | x $ 12.00 each | = $ 384.00 |
| 10 Hours Concrete Pour Inspection | x $ 32.00/hour | = $ 320.00 |
| 3 Trips to job site | x $ 20.00 each | = $ 60.00 |
| *Foundation Slab Total*.................................. | | *$ 892.00* |

### Structural Steel Welds and Bolt Inspections

| | | |
|---|---|---|
| 10 Hours of Inspections | x $ 75.00/hour | = $ 750.00 |
| AWS Certified Weld Inspector | | |
| 2 Trips to job site | x $ 20.00 each | = $ 40.00 |
| *Inspections Total*.................................. | | *$ 790.00* |

### Site Grading (Parking Lot and Improved Areas)

| | | |
|---|---|---|
| 1 Proctor (Subgrade) | x $ 125.00 each | = $ 125.00 |
| 1 PI (Subgrade) | x $ 40.00 each | = $ 40.00 |
| 12 Subgrade Density Tests | x $ 20.00 each | = $ 240.00 |
| 2 Proctors (Site Fill) | x $ 125.00 each | = $ 250.00 |
| 2 PI's (Site Fill) | x $ 40.00 each | = $ 80.00 |
| 48 Site Fill Density Tests | x $ 20.00 each | = $ 960.00 |
| 6 Trips to job site | x $ 20.00 each | = $ 120.00 |
| *Site Grading Total*.................................. | | *$ 1,815.00* |

### Miscellaneous Sitework (Inlets, RipRap, Sidewalks, and Light pole Foundations)

| | | |
|---|---|---|
| 6 Sets of 4 Cylinders = 24 Cylinders | x $ 12.00 each | = $ 288.00 |
| 4 Trips to job site | x $ 20.00 each | = $ 80.00 |
| *Sitework Total*.................................. | | *$ 368.00* |



**Utility Backfill Testing**

| | | | | |
|---|---|---|---|---|
| 12 Backfill Density Tests | x $ | 20.00 each | = $ | 240.00 |
| 4 Trips to job site | x $ | 20.00 each | $ | 00 00 |
| *Utility Backfill Total*..................................................................................................... | | | *$* | *320.00* |

**Staff Review & Consultation**

| | | | | |
|---|---|---|---|---|
| 5 Hours Administrative Services | x $ 25.00 each | | = $ | 125.00 |
| *Staff Total*................................................................................................................... | | | *$* | *125.00* |

*GRAND TOTAL*.................... **$ 7,864.00**

Estimated price excludes the following:

* Charges for Retests
* A minimum of three density tests are required per call out
* A minimum of two hours is required per call out
* Work done over 8 hours per day or on weekends and holidays will be charged 1.5 times the rate quoted above
* Minimum of 24 hour notice to schedule testing
* Terms are net 30 days



# TAB
# 7

37

SOAH DOCKET NO. 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

| | | |
|---|---|---|
| TEXAS BOARD OF PROFESSIONAL ENGINEERS | ) ) ) ) | BEFORE THE STATE OFFICE |
| VS. | ) ) ) ) | OF |
| RAGHUNATH DASS | ) | ADMINISTRATIVE HEARINGS |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

CONTESTED CASE HEARING

April 18, 2012

BEFORE ADMINISTRATIVE LAW JUDGE RICHARD WILLFONG

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

BE IT REMEMBERED that the above-captioned matter came on for hearing on the 18th day of April, 2012, between the hours of 9:10 a.m. and 1:07 p.m., at 300 W. 15th Street, 4th Floor, 408D, Austin, Texas 78701, and the following proceedings were reported by Pamela Nichols, CSR, and reduced to writing and set out as follows:

2

A P P E A R A N C E S

FOR THE TEXAS BOARD OF PROFESSIONAL ENGINEERS:

Mr. Dewey E. Helmcamp,III, J.D.
TEXAS BOARD OF PROFESSIONAL ENGINEERS
1917 S. Interstate 35
Austin, Texas   78741-3702
Telephone:          512.440.3061
Fax:                512.40.0417
E-mail:             dewey.helmcamp@engineers.texas.gov


FOR THE RESPONDENT, RAGHUNATH DASS:

Mr. Raghunath Dass, Pro Se
8719 Copperbrook
Houston, Texas   77095
Telephone:      713.367.4445
Fax:            281.858.5092
E-mail:         rdass47@gmail.com




ALSO PRESENT:

Ms. Valarica Olfers

I N D E X

                                                    PAGE

Appearances. . . . . . . . . . . . . . . . .          2


OPENING STATEMENT BY MR. HELMCAMP                     12
OPENING STATEMENT BY MR. DASS                         16


PRESENTATION ON BEHALF OF THE PETITIONER

TEXAS BOARD OF PROFESSIONAL ENGINEERS


CLARENCE WILLIAM CLARK, JR.

Direct Examination by Mr Helmcamp . . . . . .        22
Continued Direct Examination by Mr. Helmcamp         74
Cross Examination by Mr. Dass.......... . . .        87
Clarifying Examination by ALJ Willfong. . . .        92


LEWIS SHRIER

Direct Examination by Mr Helmcamp . . . . . .        46
Cross-Examination by Mr. Dass . . . . . . . .        63


RAGHUNATH DASS
Voir Dire Examination By Mr. Helmcamp . . . . .      97

4

PRESENTATION ON BEHALF OF THE RESPONDENT

RAGHUNATH DASS

DAVID WENDEL (via telephone)

Direct Examination by Mr. Dass. . . . . . .        30
Cross-Examination by Mr Helmcamp . . . . . .       41

RAGHUNATH DASS

Direct Testimony By Mr. Dass. . . . . . .        108
Cross-Examination by Mr Helmcamp . . . . . .       117
Clarifying Examination by ALJ Willfong. . . .     126

PETITIONER EXHIBITS

| NO. | DESCRIPTION | MARKED | ADMITTED |
|-----|-------------|--------|----------|
| 1 | . . . . . . . . . . . . . .<br>Texas Engineering Practice Act and Rules Concerning the Practice of Engineering and Professional Engineering Licensure | 20 | 20 |
| 2 | . . . . . . . . . . . . . .<br>Policy Advisory Opinion Regarding Construction Materials Engineering, 8/20/09 | 20 | 21 |
| 3 | . . . . . . . . . . . . . .<br>Fax Transmittal from Shrier to Pennington, transmitting TSI Laboratories, Inc., Proposal No. 02036 | 21 | 21 |
| 4 | . . . . . . . . . . . .<br>Various unsealed testing reports of TSI Laboratories, Inc. | 49 | 56 |
| 5 | . . . . . . . . . . . . .<br>Various sealed testing reports of TSI Laboratories, Inc. | 57 | 60 |
| 6 | . . . . . . . . . . . .<br>3/30/12 Email, Dass to Shrier, with reply | 59 | 59 |
| 7 | . . . . . . . . . . . .<br>3/29/12 Email, Dass to Wendel | 60 | 61 |
| 8 | . . . . . . . . . . . . .<br>Policy Advisory Opinion Regarding Construction Materials Engineering, 8/20/09 | 76 | 76 |

RESPONDENT EXHIBITS

| NO. | DESCRIPTION | MARKED | ADMITTED |
|-----|-------------|--------|----------|
| 1 | . . . . . . . . . . . . .<br>Various records | 95 | 103 |
| 2 | . . . . . . . . . . . . .<br>Records labeled as<br>"Mr. Wendel, Mr. Shrier,<br>Mr. Mark Communication File" | 95 | 103 |
| 3 | . . . . . . . . . . . . .<br>Various records | 95 | 107 |

CLOSING STATEMENT BY MR. HELMCAMP                          144
CLOSING STATEMENT BY MR. DASS                             147

REPORTER'S CERTIFICATE                                    150

P R O C E E D I N G S

ALJ WILLFONG: Good morning. It is now about 10 minutes after nine in the morning. This is Wednesday, April the 18th, 2012. My name is Richard Willfong and I'm the Administrative Law Judge that's been assigned to this case.

This is SOAH Docket No. 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, and it's the Texas Board of Professional Engineers Case No. D31480, and the matter is styled The Texas Board of Professional Engineers Vs. Raghunath Dass, Professional Engineer. His license number is 90119.

This hearing is being held in the SOAH hearing facility in Austin, Texas. And we'll begin today by taking appearances, and I'll take the appearance first of the Board.

MR. HELMCAMP: Thank you, Judge. My name, for the record, is Dewey E. Helmcamp, III. I'm a staff attorney for the Board of Professional Engineers. To my immediate right is Ms. Valarica Olfers, who is the prime investigator, or who was the prime investigator on this case. I would like to also designate her as a party representative to be with me at the table.

To Ms. Olfers' immediate right is Mr. C.W. Clark. Mr. Clark is the director of the Compliance and Enforcement Division of the Board of Professional

Engineers. He too I would like to designate as a party representative, but he will also be giving testimony on the merits, as well, on certain aspects of this case.

ALJ WILLFONG: Thank you.

And Mr. Dass, would you please note your appearance, as well.

MR. DASS: Thank you, Your Honor. I am Raghu Dass. I'm a professional engineer in state of Texas. I do geotechnical engineering and construction materials engineering and testing for my profession, and I have a Ph.D. degree in foundational engineering and a master's degree in geotechnical engineering from Southern Illinois University. And I have been in Texas since '98 providing service, professional service in different capacities in Houston and different parts of Texas.

ALJ WILLFONG: Thank you. And for the record, I need to ask you a couple of things about your appearance today without counsel.

You understand that in a hearing such as this, you have a right to hire a lawyer to represent you in this proceeding. You understand that?

MR. DASS: Yes, sir.

ALJ WILLFONG: And for some time during the course of this proceeding, you, in fact, were

come about, and what does it particularly say to the professional engineers in Texas?

A. Interestingly enough, this particular policy advisory had been -- the issue had been around for a number of years even prior to this process being implemented after 2003. The issue has to do with construction materials testing and at what point does an engineer need to be involved in the evaluation or analysis of that testing.

It had been determined for a number of years that CMT, or construction materials testing, in and of itself was not -- did not require a professional engineer's involvement. However, when it's involving a public works project, then -- or any other, even if it was not a public works, it would require an engineer's involvement if the test data had to be analyzed and a determination either for acceptance would have to be done by a professional engineer.

Q. All right. And these general thoughts are contained within the paragraphs comprising this Policy Advisory Opinion; is that correct?

A. Yes, it is.

Q. Now, I notice toward the bottom there is the mention which you have referred to of "Public Works," and I'd like to ask you, before we completely get into

Q.    So how you select?  You have two companies and two sets of SOQs and two sets of testing proposals.  So how you select, based on what criteria?

A.    As I had stated to, I believe it was the investigator several years ago, my best recollection is that I presented it to our county judge and one of our commissioners, and they reviewed it and selected TSI to provide the service for us, but I do not recall what their criteria was for the selection.

So, you know, it could have been price. I'm not real sure exactly what their thought process was.  As I had told the investigator earlier also, to the best of my knowledge, because it was not something of a great dollar value, that was not presented to commissioner's court.  It was just treated as a regular departmental purchase.

Q.    During the testing or during the construction of the project, TSI provided the service.  Who was your engineer of record onsite?

A.    On the Horse Barn Project, the engineer I believe was Naismith Engineering, was in charge of, you know, basically the design and the drawing and the monitoring of the project.  TSI, and then later Rock, as I recall, were only responsible for the materials testing.

A.   Since 1983.  For a while.

Q.   Okay.  Do you have any particular -- I know there's not a specialization within the field of engineering, but do you have a field, like structural or mechanical or anything of that nature, civil?

A.   Right.  I've practiced as a structural engineer.

Q.   Okay.  And approximately how long have you been employed with Naismith Engineering?

A.   A little over 10 years.  I started in 2001.

Q.   All right.  And therefore, by that answer you were clearly employed in the spring of 2009 with regard to a --  That's an awkward question, let me start over.

You were clearly, then, employed by Naismith Engineering in the spring of 2009?

A.   Yes.

Q.   Do you have a recollection of a project that we are referring to as the Horse Barn Project at the San Patricio County Fairgrounds?

A.   Yes.

Q.   Would you tell the Judge what, in brief, was Naismith Engineering's responsibilities, and yours in particular, with regard to that project.

A.   Well, we were what was called the prime consultant on the project.  It was -- the County had

hired Naismith Engineering to do all the engineering and design and oversee the construction of the Horse Barn Project.

Q.    As a part of that, were you also -- did your duties or responsibilities include receiving what we are referring to as construction material test results, or CMT work?

A.    Yes.

Q.    And do you recall, sir, who initially was awarded -- I think a term would be "subcontract" to do the CMT testing?

A.    Right.  TSI Laboratories, I believe.

Q.    All right.  At this time, Your Honor, I would like to approach the witness.

ALJ WILLFONG:  You may.

(Board Exhibit No. 4 marked.)

MR. HELMCAMP:  I am providing a copy of what I've marked as Board Exhibit 4 to Mr. Dass.  I would provide at this time a copy to the witness, and then I'm going have some questions about this.

Q.    (BY MR. HELMCAMP)  Sir, I've handed you what's been marked but not admitted yet as Board Exhibit 4. I'd like you to take a moment.  You'll see that the sub-pages are numbered 4(a) through, I believe 4(l). Would you tell the Judge what these appear to be?

A. Well, when I was first made aware of this Advisory, I read it several times; and even after reading it, I wasn't a hundred percent sure what it was telling me. So I called the Texas Board and asked for some advice from one of their folks who gives advice about these kind of things, and basically what they told me is that if -- that the difference between construction material engineering and construction material testing is, I could ask for construction material testing without engineering if I had sufficient experience on my own to be considered a geotechnical engineer to review those kind of things. And I asked myself if I could do that, and I said, no, I really don't have that experience.

And so at that point, then I understood what this meant, and that meant that I'd need to get construction materials engineering and not just testing, because I'm not qualified to make those kind of determinations.

Q. **And in doing that, sir, as you can look at -- and if you feel the need, please refresh and look at the actual Advisory Opinion. But if that's the case, on Page 2, the Board has provided this guidance: "A licensed professional engineer must directly supervise any element of acceptance testing from data collection**

but I didn't have any doubts that TSI was doing their job appropriately.

Q. When we go there, there is an engineer onsite during the construction phase during the working hours all the time from Naismith as the engineer of record, but the testing people, they come and go, pick up a sample. And the compactor comes, they go pick up the sample. The proof will come after the compaction rollers are done. They put as to the density and get it -- They're not during the -- the testing lab is not there eight hours a day all days during the construction. The engineer at the trailer -- or the superintendent has a set drawings. They always follow the set of drawings and specifications and they tell, based on the legend, this passes or fails. The specification and description of the -- interpretation of the test result is done by engineer onsite, not at the engineer in the lab.

ALJ WILLFONG: Mr. Dass, I understand that's your position, but at this time you need to phrase any questions you have of Mr. Shrier.

MR. DASS: Yeah, I'm going to do that.

Q. (BY MR. DASS) According to the TSI proposal, TSI staff provided testing service upon selection. Did you have any problem with this selection?

That's why I'm here.

The last one is "Respondent violated Board Rule 137.63(a) when he submitted sixteen CMT reports to the Board on June 28, each of which are signed and sealed but undated in an apparent attempt to persuade the Board that he had signed and sealed the CMT reports before each was released to Naismith as he was required to do as the engineer of record for TSI on the San Patricio horse barn project."

Your Honor, I was not the engineer of record for the CMT. I was the quality engineer or the vice-president of engineering of this company. When a project manager did not do his job properly in the field for one month and he -- I called, after knowing some concern. He was so low on attacking the quality of the work of TSI so that I had -- after listening to him, then I -- then he told me that he's not competent to do the -- do the check, quality check, quality check on the tests because he was a structural engineer, though -- though it was not a requirement for him to be that qualified.

Because anything, anything that goes from a company outside has the engineer's work stamp, because engineer ensures that the tests were performed according to the ASTM manual. The technicians were qualified and

have the experience of doing the particular tests on soil, being the most difficult test -- material to test because it has a lot of variability, and I have been working for that company already one and a half year at that time.

Then we're requested by the County-contracted project engineer, Mr. Shrier, during a telephone conversation on 17th. The Respondent performed a quality check of the laboratory test data, including the lab sheets, and certified them as a quality engineer of the TSI. This test reports remains -- CMT report, testing report, not engineering report but testing report, and CMT's report should not be signed, sealed, and dated by a P.E.

Alternatively, construction material engineering reports should be signed by a project P.E., a project manager who's a P.E., according to the standard of care. Sealing is above the standard of care for construction -- That's why I gave you some other companies' standard of care how they seal their reports.

MR. HELMCAMP: I would just mention, Your Honor, that -- excuse me -- that those were not admitted into evidence, so they're not before the record.

ALJ WILLFONG: Sustained.

MR. DASS: During an informal conference

so there's no call for me to --

Q. Yeah, I understand. And again, I think fairly summarizing your testimony, No. 1, you didn't think that the CMT required your presence. That's basically your position?

A. No. CMT requires only my quality position, that anything -- because under the highest percentage of engineering, anything goes out out of the door has my oversight and quality. The equipments are calibrated, the test methods are followed, the calculations are right. That I have -- I have.

Q. Okay.

A. But not the -- to say this particular project did not come onto my radar until 17, April 17, because it's -- When a project is hourly, then we have a problem. But CMT, it goes to another file. The CME, it goes to another file. So I'll not even worry about that, except every day I get -- I'm geotechnical engineer. Every day I get test report from the lab per my geotechnical. So I have been doing that, so -- that quality. Otherwise, I'll not be signing the geotechnical report.

Q. Is it your testimony on this project, the Horse Barn Project, that you were seeing the CMT reports every day?

# TAB
# 8

D-1-GN-14-000568

SOAH DOCKET NO. 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
TBPE CASE NOS. D-31480

| | | |
|---|---|---|
| TEXAS BOARD OF PROFESSIONAL ENGINEERS | ' | BEFORE THE STATE OFFICE |
| | ' | |
| v. | ' | OF |
| | ' | |
| RAGHNUATH DASS, P.E. | ' | |
| LICENSE NO. 90119 | ' | ADMINISTRATIVE HEARINGS |

## TEXAS BOARD OF PROFESSIONAL ENGINEERS' AMENDED FINAL ORDER

Be it known that on this date the matter of the Texas Board of Professional Engineers (Board) vs. Raghnuath Dass, P.E., License No. 90119 (Respondent) was heard by the Board in an open meeting on November21, 2013. The Board finds that after proper and timely notice was given to Respondent, the above styled case was heard by an Administrative Law Judge assigned to the State Office of Administrative Hearings in Austin, Texas on April 18, 2012. Respondent appeared and represented himself. The Board was represented by Staff Attorney Dewey E. Helmcamp III.

Following the presentation of evidence, the Administrative Law Judge (ALJ) closed the record. On June 13, 2012, the ALJ prepared a Proposal for Decision (PFD) which found that Respondent violated 22 TAC sections 137.33(b), 133.37(f) and 137.63(b) (2) and recommended a sanction of a Formal Reprimand, a suspension of Respondent's Texas engineer's license for two years with the entire period probated, and a $4,000.00 administrative penalty.

In accordance with the Texas Administrative Procedure Act, Respondent appealed the Board's Final Order to a District Court of Travis County, Texas. On September 27, 2013, the Court, after hearing arguments of counsel and reviewing the Administrative record, entered a Final Judgment in which the Court found that Findings of Fact Nos. 16 and 17, and Conclusion of Law No. 8, were not

supported by substantial evidence; however, all remaining Findings of Fact and Conclusions of Law were supported by substantial evidence and were affirmed. The Court remanded the case to the Board for further action the Board deems appropriate.

The Board having previously reviewed the PFD, including Findings of Fact and Conclusions of Law, the Respondent's Exceptions to the PFD, the Board's Response to the Exceptions, and the transcript of the hearing, and having reviewed as well the Final Judgment of the Court and gave due consideration thereto, by majority vote of the members of the Board present and voting at the meeting, the Board readopts re-adopts the ALJ's PFD including the ALJ's Findings of Fact and Conclusions of Law, except for Finding of Fact Nos. 16 and 17, and Conclusion of Law No. 8, and reassesses the sanction based on the now approved Findings of Fact and Conclusions of Law as follows:

## I. FINDINGS OF FACT

1.  Raghunath Dass (Respondent) is a licensed professional engineer holding professional license number 90119 issued by the Texas Board of Professional Engineers (Board). At the times applicable to this matter, he was the sole licensed professional engineer employed by Trinity Soils Investigation Laboratories, Inc. (TSI).

2.  On December 8, 2011, staff of the Board (Staff) sent a notice of hearing and a Complaint to Respondent proposing a two-year probated suspension of Respondent's license, a formal reprimand, and an administrative penalty of $7,000.

3.  The notice of hearing contained a statement of the time, place, and nature of the hearing; a statement of the legal authority and jurisdiction under which the hearing was to be held; a reference to the particular sections of the statutes and rules involved; and a short plain statement of the matters asserted.

4.  The hearing on the merits was held on April 18, 2012, before Administrative Law Judge (ALJ) Richard R. Wilfong in the William P. Clements Building, 300 West 15th Street, Fourth Floor, Austin, Texas. All parties appeared and participated in the hearing. The Board was represented by Dewey E. Helmcamp III, attorney. Respondent represented himself. The record closed the same day.

5.    On February 18, 2009, TSI submitted a proposal to perform construction material testing (CMT) for the San Patricio County fairgrounds horse barn project (the Project). The proposal included a price quote.

6.    The Project is a public works project.

7.    From February 17, 2009, through April 7, 2009, TSI submitted 16 CMT reports to San Patricio County for the Project.

8.    None of the 16 CMT reports released to San Patricio County were signed and sealed by a licensed professional engineer.

9.    Respondent did not perform or directly supervise any of the testing reflected in the 16 CMT reports submitted by TSI to San Patricio County for the Project.

10.   Respondent had no knowledge of the project, or the actions of TSI with respect to the Project, before April 17, 2009.

11.   On April 20, 2009, Respondent added his undated signature and seal to copies of the 16 CMT reports and resubmitted them to San Patricio County.

12.   Respondent provided copies of the 16 CMT reports bearing his undated signature and seal when he attended an informal conference with the Board on June 28, 2010.

13.   Respondent failed to exercise reasonable care and diligence to prevent TSI from submitting a proposal for construction material testing for the Project which included a price bid.

14.   Respondent failed to exercise reasonable care and diligence to prevent TSI from performing construction material testing for the Project without having the tests performed or directly supervised by a licensed professional engineer.

15.   Respondent failed to exercise reasonable care and diligence to prevent TSI from submitting CMT reports for the Project without the signature and seal of a licensed professional engineer.

16.   Respondent added his signature and seal to the CMT reports, after he reviewed the testing data, to appease Mr. Shrier's concern that the CMT reports needed to be signed and sealed by a licensed engineer.

17.   Staff failed to prove a common understanding and interpretation among professional engineers concerning the requirements relating to material testing in conformance with the Professional Services Procurement Act (PSPA).

18.   Respondent has no history of prior violations of Board rules.

19. Respondent's conduct did not result in any economic damage.

20. Respondent did not profit from his actions.

## II. CONCLUSIONS OF LAW

1. The Texas Board of Professional Engineers (Board) is the agency charged with administering and enforcing the provisions of the Texas Professional Engineers Act and the Board Rules, pursuant to Tex Occ. Code Ann. §§ 1001.207, 1001.451, 1001.452, and 1001.454.

2. The State Office of Administrative Hearings has jurisdiction over the hearing in this proceeding, including the authority to issue a proposal for decision with proposed findings of fact and conclusions of law, pursuant to Tex. Gov't Code Ann. Ch. 2003.

3. Notice of the complaint and of the hearing on the merits was provided as required by Tex Occ. Code Ann. § 1305.253 and by the Administrative Procedure Act, Tex. Gov't Code Ann. §§ 2001.051 and 2001.052.

4. The Board had the burden of proving the case by a preponderance of the evidence pursuant to 1 Tex. Admin. Code (TAC) § 155.41.

5. Based on the above Findings of Fact, Respondent violated 22 TAC § 137.33(b) when he failed to supervise the performance of the CMT testing.

6. Based on the above Findings of Fact, Respondent violated 22 TAC § 137.33(f) when he allowed TSI to release the CMT reports without having signed, dated, and sealed the CMT reports before they were released.

7. Based on the above Findings of Fact, Respondent violated 22 TAC § 137.63(b)(2) when he failed to exercise reasonable care and diligence to prevent TSI from submitting a competitive bid for professional engineering services in violation of the PSPA.

8. The Board is authorized to assess an administrative penalty of no more than $3000 per violation of Board rules, and may include in the penalty the actual costs of investigating the action. Tex. Occ. Code Ann. § 1001.502 (a) and (c).

9. The sanctions suggested by 22 TAC § 139.35(b) for each of Respondent's violations are a two-year probated suspension of Respondent's license, a reprimand, formal or informal, and a fine of $500 to $2,500.

10. Taking into consideration the factors set forth in 22 TAC § 139.35(a), the above Findings of Fact support a less severe sanction to deter future misconduct.

11. Respondent's license should be suspended for a period of two years, and the period of suspension should be fully probated. In addition, Respondent should receive a formal reprimand and be assessed an administrative penalty of $1,500.00, inclusive of any cost incurred by the Board in its investigation of this matter.

## ORDER

WHEREFORE, PREMISES CONSIDERED, the Texas Board of Professional Engineers does hereby issue a Formal Reprimand and a two-year suspension of the Texas engineer license held by Mr. Raghunath Dass, P.E., License Number 90119, for conduct alleged in the foregoing Final Board Order, to be fully probated for the entire period contingent upon Respondent's payment of a $1,500.00 administrative penalty to the Board within thirty days of the date this Order is final and appealable. Respondent's failure to pay the administrative penalty within thirty days of the date this Final Order is final and appealable shall constitute a separate violation of the Act and may result in further disciplinary action against Respondent including but not limited to Respondent's probation being vacated by operation of law without any further action other than notice from the Board's Executive Director. The probation will be further contingent upon Respondent not being found in violation of a separate offense of the Act or Board rules during said period of probation by the Board.

DATE ISSUED: November 21, 2013, by the

MEMBERS OF THE TEXAS BOARD OF PROFESSIONAL ENGINEERS:

Daniel O. Wong, Ph.D., P.E.
Chair

66

# TAB
# 9

| | | |
|---|---|---|
| RAGHUNATH DASS, P. E., | § | COURT OF APPEALS |
| | § | THIRD DISTRICT OF TEXAS |
| Appellant, | § | |
| | § | |
| V. | § | AUSTIN, TEXAS |
| | § | |
| TEXAS BOARD OF | § | |
| PROFESSIONAL ENGINEERS | § | |
| | § | |
| Appellee. | § | |

## APPELLANT'S MOTION TO WITHDRAW APPEAL

COMES NOW the Appellant, Raghunath Dass, PE and hereby respectfully moves Texas Third Court of Appeals pursuant to Texas Rules of Appellate Procedure 10.1 (a) (5) that the Court allows him to withdraw the pending appeal. In support of this motion, Appellant shows the following:

1. Travis County District Court entered a final judgment on September 27, 2013 based on a judicial review of a Final Order from Appellee.

2. Appellant filed a Notice of Appeal to this Court on October 23, 2013.

3. During the time that passed from the filing of Notice of Appeal and this motion, Appellee conducted a proceeding on November 21, 2013 in the light of the final judgment from Travis County District Court and issued an Amended Final Order from Appellee with its associated due process.

4. Appellant believes that Notice of Appeal has become moot due to the amended Final Order from Appellee. A copy of the order is herewith attached.

5. Counsel of Appellee does not oppose this request.

EXHIBIT

5

370

WHEREFORE Appellant prays this Honorable Court allow him withdraw his appeal, and waive any costs associated due to his indigent status.

Submitted  3rd  day  December, 2013

Respectfully Submitted,

Raghunath Dass, PE
8719 Copperbrook Drive
Houston, Texas 77095
Email: rdass47@yahoo.com
(281) 248 3983

**APPROVED:**

ATTORNEY FOR APPELLEE

Veena Mohan

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with the counsel regarding this motion on December 2, 2013.

Veena Mohan
Assistant Attorney General
Office of the Attorney General
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 936-0535
Facsimile: (512) 457-4676
Veena.mohan@attorneygeneral.gov
ATTORNEY FOR APPELLEE

_____
Raghunath Dass

# TAB
# 10

40

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## JUDGMENT RENDERED DECEMBER 18, 2013

## NO. 03-13-00711-CV

Raghunath Dass, P.E., Appellant

v.

Texas Board of Professional Engineers, Appellee

---

**APPEAL FROM 419TH DISTRICT COURT OF TRAVIS COUNTY
BEFORE JUSTICES PURYEAR, ROSE AND GOODWIN
DISMISSED ON APPELLANT'S MOTION -- OPINION BY JUSTICE ROSE**

---

This is an appeal from the final judgment signed by the trial court on September 27, 2013. The appellant Raghunath Dass, P.E. has filed a motion to dismiss the appeal, and having reviewed the record, the Court agrees that the appeal should be dismissed. Therefore, the Court grants the motion and dismisses the appeal. The appellant shall pay all costs relating to this appeal, both in this Court and the court below.



EXHIBIT

6

379